STEVENS CONSTRUCTION CORPORATION, and others, Plaintiffs-Appellants, v. DRAPER HALL, INC., and others, Defendants-Respondents: BRUCE COMPANY, INC., Defendant-Appellant.

*No. 764 (1974). Submitted on briefs April 12, 1976.— Decided June 14, 1976.*
(Also reported in 242 N. W. 2d 893.)

For the appellants the cause was submitted on the briefs of *John J. Ottusch* and *Cook & Franke, S. C.* of Milwaukee.

For the respondents the cause was submitted on the brief of *Hunter & Tikalsky* of Waukesha.

BEILFUSS, C. J. This appeal involves a mechanics lien foreclosure by two lien claimants, the plaintiff-appellants, Stevens Construction Corporation and the Bruce Company, against the defendant-respondents, Draper Hall, Inc., Herman J. Wagen, Gladys P. Wagen, Germaine N. Fischer, Philip D. Pearson, Carol Dixon Pearson, Hugh C. Howard, Arlene L. Howard, E. H. Schultz, Fern E. Schultz, Earl P. Keyes, Dorothy C. Keyes, Clifford W. Auer, Mary E. Auer, Albert C. Schallock, Florence M. Schallock, Milo H. Janzen, Jr., Marian D. Janzen, Waukesha County Marine Bank, First Federal Savings & Loan Association of Menomonee Falls, and the additional added defendant-respondents, Henry J. Pyhel, Joan L. Pyhel, and Hartland Plastics, Inc. The trial court entered judgment imposing a proportional construction lien upon eight units of the Draper Hall Condominium located in Oconomowoc. The plaintiff-appellants appeal, claiming they are entitled to enforce the full dollar value of their liens against each individual unit.

The facts involved in this controversy are essentially undisputed. In January, 1971, Stevens Construction Corporation entered into a contract with Draper Hall, Inc., in which it agreed to provide general construction work for a structure to be known as Draper Hall. Stevens

commenced construction in July of 1971 and made its first substantial excavation during the first week of September, 1971.

In February, 1971, the Bruce Company entered into a contract with Draper Hall, Inc., whereby the Bruce Company agreed to furnish general landscaping work for the same Draper Hall project. The Bruce Company began its landscaping work on February 12th.

On October 28, 1971, Draper Hall, Inc., complied with the provisions of ch. 703, Stats., relating to the development of condominiums, by recording in the office of the Waukesha county Register of Deeds the Condominium Declaration required by sec. 703.03.

Stevens performed its final work on the project in February of 1973. On March 1, 1973, it filed a construction lien claim in an amount in excess of $90,000, after first giving notice of its intent to file a lien. An amended claim, containing the legal description of Draper Hall as a condominium with 35 discrete units, was filed on May 21, 1973. The Bruce Company completed its landscaping work on November 1, 1972, and, after giving notice of its intent to file a lien, filed a lien claim on March 29, 1973, in the amount of nearly $12,000. This claim was similarly amended on May 17, 1973.

First Federal Savings and Loan Association of Menomonee Falls provided the financing for this project, and secured its loan by a mortgage on the property recorded on October 28, 1971. Work on the project was substantially completed in August, 1972, although Stevens and the Bruce Company worked on the project until early 1973. Between August 10, 1972, and October 24, 1972, the eight units in question on this appeal (out of a total of 35) were sold and conveyed to various purchasers. As provided in the mortgage, First Federal released these individual units from the blanket mortgage after the purchasers paid to First Federal the loan amount attributable to each unit.

In April of 1973, Stevens began proceedings to foreclose upon its lien against, as relevant to this appeal, Draper Hall, Inc., First Federal, and the eight owners of the units which had been sold. Other owners and incumbrancers were eventually added to the action, as was the Bruce Company, which also claimed a lien.

First Federal then cross-complained for foreclosure of the mortgage it still held on the 27 unsold units, claiming that, even though this mortgage was recorded subsequent to the commencement of construction work, it was nevertheless entitled to priority under sec. 215.21 (4) (a), Stats., which section accords priority to a mortgage executed to a chartered savings and loan association over a lien filed subsequent to the recording of the mortgage. In July of 1973 First Federal, Draper Hall, Inc., Stevens, and the Bruce Company worked out an agreement between themselves relating to the 27 unsold units. First Federal agreed to hold its foreclosure action in abeyance for 15 months during which time it would attempt to sell the unsold units. Stevens and the Bruce Company were to receive a certain sum per unit sold in reduction of their respective lien claims, with the balance going to First Federal. It was also agreed that at the end of the term First Federal could seek judgment of foreclosure and sale of units that were then unsold, with all the sale proceeds going to reduce its mortgage, with the remainder, if any, going to satisfy the lien claims of Stevens and the Bruce Company.

Six units were sold during the term of the agreement, and the claims of Stevens and the Bruce Company were reduced to approximately $70,000 and $8,000, respectively, exclusive of interest and costs.

In August of 1974 the trial court heard and determined the lien claims of Stevens and the Bruce Company with respect to the eight units which were first sold. The trial court rejected the claimants' argument that they were entitled to look to these eight units for the full

dollar amounts of the remaining claims, and concluded that each of the eight unit owners was entitled to a lien release upon payment of a proportional share (*i.e.,* ⅓₅th) of the amounts still due and owing the claimants. The amended judgment provided that the eight units should be sold unless these proportional shares were paid. It also provided that, if the proportional shares were paid, Stevens and the Bruce Company must release the units from the proportional liens. On October 28, 1974, after the eight unit owners and other interested parties paid $23,500 to Stevens and about $3,300 to the Bruce Company, Stevens and the Bruce Company executed lien releases in favor of the eight units.

When the agreement with First Federal ran out in November of 1974, First Federal foreclosed upon the 21 units which had not been sold. The proceeds from the sale of these units did not even cover the loan amounts due First Federal, so that Stevens and the Bruce Company received nothing from this sale.

A preliminary issue on appeal is presented by the motion of respondents to dismiss this appeal on the ground that the lien claimants, the plaintiff-appellants, waived their right to appeal by accepting the benefits of the foreclosure judgment. We disagree and deny the motion to dismiss the appeal.

The general rule applicable to waiver of appeal by acceptance of the benefits of the judgment appealed from was reiterated by this court in the recent case of *Wyandotte Chemicals Corp. v. Royal Electric Mfg.*[1] The rule is that an appellant is not permitted to take an appeal when he voluntarily accepts a benefit which is dependent upon that part of the order or judgment which he attacks on appeal. A corollary of that rule is that a party is not precluded from taking an appeal which does not involve a reversal of that part of the judgment under

[1] (1975), 66 Wis. 2d 577, 592–594, 225 N. W. 2d 648.

which he has received payment.[2] In other words, a party waives his right to appeal when he accepts the fruits of a judgment to which he may not be entitled if his appeal succeeds.[3]

It follows then that acceptance of payment under a judgment for less than the amount claimed does not prevent an appeal to modify the judgment in order to increase the recovery to the full amount claimed.[4] Where the appeal is confined to liability for the balance claimed, the appellant does not waive his right to review by accepting the partial amount provided for in the judgment appealed from. As long as the party accepting the money has not put his right to that money in jeopardy in his own appeal, there is no waiver, even though his right to the money may be endangered by his opponent's cross-appeal or notice of review.[5]

In the instant appeal, Stevens and the Bruce Company do not place in jeopardy their right to the proportional payments which they have already accepted under the judgment. They seek only to increase the amount of that judgment to cover the full amount of their claims for labor and materials. The only error which they allege is the trial court's specific denial of these claims for the full amount. The fact that the respondent-owners attempt to attack the proportional payments cannot be imputed to the appellant-lien claimants. The appellants have not waived their right to appeal, and the motion to dismiss the appeals must be denied.

The fact that the claimant-appellants gave lien releases after receiving the proportional payments does not alter this conclusion. These releases provide only that the claimants are releasing the units from those

[2] *Fiedler v. Howard* (1898), 99 Wis. 388, 396, 75 N. W. 163.

[3] *Rasmussen v. Schweizer* (1927), 194 Wis. 362, 367, 368, 216 N. W. 481.

[4] 4 C. J. S., *Appeal and Error*, p. 651, sec. 216 c (2).

[5] 4 Am. Jur. 2d, *Appeal and Error*, p. 751, sec. 255.

particular claims which the claimants have "under and by virtue of the amendment judgment rendered on November 1, 1974." They thus reduce the total lien claims by an amount equal to the proportional payments made under the judgment, and do not entirely extinguish the lien for the purpose of securing the balance of the claims by way of appeal. Moreover, the trial court specifically directed the claimants in its judgment to give lien releases if they received the proportional payments. This result is also required by statute.[6] Although the more regular procedure would have been for the appellants to procure a stay of the entire judgment pending appeal, it cannot be said that the acceptance of proportional payments and the giving of partial releases amounted to a voluntary waiver of the claimants' right to appeal for the full amount of the lien claims.

This brings us to the issue presented on this appeal by the lien claimants: Does sec. 703.09 (2), Stats., which provides that, if a lien becomes effective against two or more condominium units, any unit owner may remove the lien against his unit by proportional payment, require the imposition of a proportional lien in this case?

The trial court ruled that sec. 703.09 (2), Stats., was applicable to the facts of this case. We agree that this subsection is applicable, although for different reasons than those given by the trial court.

Sec. 703.09, Stats., is part of the Wisconsin Unit Ownership Act, which governs the development and operation of condominiums in the state. This section provides as follows:

"703.09 Liens against units; removal from lien; effect of part payment. (1) Subsequent to recording the declaration under this chapter, and while the property remains subject to said chapter, no lien shall thereafter arise or be effective against the property. During such period liens or encumbrances shall arise or be created only

---

[6] Sec. 289.13 (1), Stats.

against each unit and the percentage of undivided interest in the common areas and facilities appurtenant to such unit, in the same manner and under the same conditions in every respect as liens or encumbrances may arise or be created upon or against any other separate parcel of real property subject to individual ownership. . . .

"(2) If a lien becomes effective against 2 or more units, any unit owner may remove the lien from his unit and from the percentage of undivided interest in the common areas and facilities appurtenant to such unit by payment of the fractional or proportionate amount attributable to his unit, such amount to be computed by reference to the percentages appearing on the declaration. Subsequent to such payment, the unit and the percentage of undivided interest in the common areas and facilities appurtenant thereto shall be free and clear of lien. Partial payment, satisfaction or discharge as to one unit shall not prevent the lienor from proceeding to enforce his lien rights against any other units and the percentage of undivided interest in the common areas and facilities appurtenant thereto, for the amount attributable to such other units."

The trial court drew a distinction between the time when liens "arise" and when they "are effective." It decided that, while the claimants' liens may have arisen in September of 1971 when, as provided in sec. 289.01 (4), Stats., "the beginning of substantial excavation for the foundations" of Draper Hall was made, these same liens did not become "effective" until the lien claims were served and filed in the spring of 1973. Under this ruling, the liens thus arose before the condominium declaration was filed in October of 1971, but were not effective until well after that date. The court further reasoned that, since the liens did not become "effective" until after the declaration was filed, they then became "effective against two or more units," as provided in sec. 703.09 (2), rather than against the property as a whole. Under the provisions of this subsection, only a proportional lien against each unit existed, rather than a blanket lien against the whole property, and this proportional lien

could be removed by proportional payment by each unit owner.

██ ██ Stevens and the Bruce Company argue that their liens arose *and* became effective when the excavations began in September of 1971. They contend that no distinction should be made between when a lien arises and when a lien becomes effective. We agree with this proposition but it makes no difference in terms of the rights of the claimant-appellants in this case. The word "effective," in the context of construction liens, should be interpreted to mean "capable of bringing about an effect."[7] A construction lien is capable of bringing about an effect at the time it arises, that is, when "substantial excavation for the foundations" of the new project begin, as provided in sec. 289.01 (4), Stats. The later events of giving notice and filing, as required by sec. 289.06, merely preserve and perfect a lien which is already effective in the sense of being capable of having an effect upon the liened land.

Acceptance of this position of appellants does not mean that sec. 703.09 (2), Stats., is inapplicable to the facts of this case. On the contrary, we conclude that this subsection still governs, even though the claimants' liens were first "effective" in September of 1971, before the condominium declaration was recorded.

██ Subsection (2), sec. 703.09, Stats., provides that a proportional lien occurs whenever "a lien becomes effective against two or more units." Obviously the most frequently occurring situation in which a lien will become effective against two or more units is when repairs are made to the common areas of the condominium unit, and left unpaid. But we conclude that a lien, originally effective as a blanket lien against the whole property,

---

[7] Webster's, *New International Dictionary* (3d ed., unabridged), page 724.

becomes effective against two or more units within the meaning of sec. 703.09 (2), when the property is made subject to the provisions of ch. 703 by the filing of a condominium declaration before the initiation of foreclosure proceedings against the property as a whole.

Thus it is not critical that the filing of the lien claims came after the condominium declaration was filed, as the trial court decided. Even if the claims were filed before the condominium declaration was recorded, only proportional liens would attach to the individual units. On the other hand, if foreclosure proceedings are begun before the condominium declaration is recorded, and a *lis pendens* filed, the situation is frozen so that the subsequent recording of a declaration does not transform the blanket lien into a proportional lien on individual units.[8]

It is settled that a lien foreclosure action is an equitable proceeding[9] and, as the trial court noted, "It is certainly not equitable for the eight owners to pay off the lien for the benefit of the other 27 units." The general rule is that a blanket construction lien against an entire property consisting of several parcels cannot be enforced *in toto* against less than all of such parcels. The reason is that it would be inequitable to burden some lesser portion of the liened premises with charges for labor and materials which were not actually furnished to that particular parcel. The corollary to this general rule is that, where the total labor and material costs for which the

[8] In accord with this resolution of the issues is the analysis of this precise case by Professor Walter Raushenbush, a draftsman of the 1968 Construction Lien Law and a commentator on Wisconsin lien law, *Wisconsin Construction Lien Law–1974* (U. of Wisconsin, 1975), pp. 51–53; 229, 230.

[9] *Martinson v. Brooks Equipment Leasing, Inc.* (1967), 36 Wis. 2d 209, 152 N. W. 2d 849, 154 N. W. 2d 353; *Sid Grinker Co. v. Craighead* (1966), 33 Wis. 2d 42, 146 N. W. 2d 478.

blanket lien is claimed can reasonably be allocated to individual parcels, the amount of the lien can be apportioned to these individual parcels on the basis of such allocation and the liens enforced to this extent against individual parcels.[10] In this case, where the condominium units are roughly similar in value, and where each unit has the same share of the common area, it is reasonable to allocate, as the trial court did, $\frac{1}{35}$th of the total lien claim to each of the eight units in question, and enforce the lien to that extent.

The trial court's decision is especially reasonable in the light of the fact that the claimants, in entering into the agreement for the sale of the 27 units with First Federal, voluntarily chose to assume the risk that they would not receive the full lien payments allocable to those 27 units. The claimants agreed that they would receive a certain sum per unit sold until the agreement expired in November of 1974, after which time First Federal would foreclose and take all sales proceeds until its mortgage was fully satisfied. Since only six units were sold before the agreement expired, the claimants did not receive the full lien payments allocable to the 27 units. The cause of the claimants' deficiencies is thus attributable to their own voluntary actions, and not to any action of the eight unit owners, who have paid the lien claims which are fairly allocable to their units.

The respondents argue one final issue on this appeal. They claim it was error on the part of the trial court to conclude that the claimant-appellants had even a valid proportional lien against the eight units. But respondents are precluded from pressing these claims of error, since

[10] Annot. (1976), *Enforceability of Single Mechanic's Lien Upon Several Parcels Against Less Than the Entire Property Liened*, 68 A. L. R. 3d 1300, and cases there cited. *See especially: Associated Sand & Gravel Co. v. DiPietro* (1973), 8 Wash. App. 938, 509 Pac. 2d 1020, 68 A. L. R. 3d 1293.

they failed to serve on the appellants a notice of review specifying in what respect they were seeking a change in the judgment.[11]

In any event, we have examined in detail all of the errors claimed by the respondents, and conclude that these claims are without merit.

*By the Court.*—Judgment affirmed.

---

[11] Sec. 274.12 (1), Stats. *See also: State v. George* (1975), 69 Wis. 2d 92, 101, 230 N. W. 2d 253; *Hutterli v. State Conservation Comm.* (1967), 34 Wis. 2d 252, 255, 256, 148 N. W. 2d 849; *McPhillips v. Blomgren* (1966), 30 Wis. 2d 134, 145, 140 N. W. 2d 267; *Tom Welch Accounting Service v. Walby* (1965), 29 Wis. 2d 123, 131, 138 N. W. 2d 139.