JAMESON, Plaintiff in error, v. STATE, Defendant in error.

*No. 75-497-CR. Submitted on briefs October 6, 1976.—*
*Decided November 3, 1976.*
(Also reported in 246 N. W. 2d 541.)

178

For the plaintiff in error there was a brief by *Howard B. Eisenberg,* state public defender.

For the defendant in error there was a brief by *Bronson C. La Follette*, attorney general, and *Thomas J. Balistreri*, assistant attorney general.

ROBERT W. HANSEN, J. The defendant challenges the sufficiency of the evidence to support his conviction on the criminal charge of removing encumbered property with intent to defraud.[1a]

 In testing the sufficiency of the evidence in a criminal trial to the court, findings of the trial court are not to be disturbed on appeal unless they are contrary to the great weight and clear preponderance of the evidence.[2] The test is whether this court can conclude that ". . . the trier of facts could, acting reasonably, be so convinced by evidence it had a right to believe and accept as true."[3] If more than one inference can be drawn from the evidence, ". . . the inference which supports the finding is the one that must be adopted."[4]

 Defendant contends that the encumbered chattel was not "removed" within the contemplation of the statute. It is true that "removal" means something more than mere "moving" the secured property from place to place, particularly in the case of an automobile. What is required is some "permanent change in situs."[5] In the case before us, the defendant admits moving twice, first to Pardeeville or Portage, then to Sun Prairie, the latter removal accomplished at midnight by U-Haul trailer. In each case he changed both his residence and the situs of the car. The statute does not require that such "removal"

---

[1a] *See:* Sec. 943.25(2)(a), Stats.

[2] *Stueck v. Le Duc* (1973), 57 Wis.2d 735, 741, 205 N.W.2d 139.

[3] *Bautista v. State* (1971), 53 Wis.2d 218, 223, 191 N.W.2d 725.

[4] *Id.* at page 223.

[5] *See: Associates Discount Corp. v. Mohs Realty* (1966), 32 Wis.2d 571, 576, 146 N.W.2d 417, this court, in a replevin action, interpreting the word "removal" as used in a predecessor civil statute, sec. 122.14, Stats. 1963.

be across state lines, and here the car involved was "removed" as that term is used in the statute.

Defendant argues that the bank was not duly diligent in its efforts to ascertain both his whereabouts and the whereabouts of the automobile. While diligence can be relevant in a civil replevin action,[6] it does not appear that the statute before us requires such showing on the part of the loan holder as a prerequisite to criminal conviction. The statute provides criminal penalties where a person "conceals, removes or transfers any personal property in which he knows another has a security interest."[7] Knowledge or notice of whereabouts of mortgaged property would be relevant as to concealment, but the statute does not permit a person to play hide-and-go-seek and later complain that the seeker did not try hard enough to locate the hiding place.

█ Even if it did, here the bank was diligent in pursuing defendant and the encumbered automobile. The bank dispatched ten to twelve delinquency notices requesting payment. A bank officer made two trips in search of the defendant and the automobile. The loan was placed for collection with a bank in the county to which defendant had moved. Civil replevin proceedings were instituted in the county to which defendant had moved. Only when all these efforts proved fruitless did the bank's attorney recommend that criminal proceedings be commenced. Due diligence on the part of the bank is not here absent.

█ Defendant asserts the record here does not establish that he removed the automobile "with intent to defraud," which the statute requires to constitute a criminal

[6] *See: Koehler v. Haechler* (1965), 27 Wis.2d 275, 278, 133 N.W.2d 730 (six-year statute of limitations begins to run against defrauded party once he has information indicating where the facts constituting fraud can be discovered).

[7] Sec. 943.25(2)(a), Stats.

violation.[8] The defendant knew that the bank had a security interest in the car, and knew that he had defaulted in his payments. Nonetheless he proceeded to twice change his residence, the second time at the midnight hour with a U-Haul trailer, without notice to the bank. Some three months after the bank's attorney had demanded in writing the return of the car, defendant had failed either to return the car or to inform the bank of its location. This evidence is sufficient to support the trial court finding of intent to defraud particularly because it is, by statute, ". . . prima facie evidence of an intent to defraud within the meaning of sub. (2)(a) [the section here involved] if a person, with knowledge that the security interest exists, removes or sells the property without either the consent of the secured party or authorization by the security agreement and fails within 72 hours after service of written demand for the return of the property either to return it or . . . make full disclosure . . . concerning its disposition, location and possession."[9] Given this sub. (3), the trial court finding of intent to defraud under sub. (2)(a) is to be affirmed.

An additional claim of error by defendant is that the special prosecutor at the trial of this case was not properly appointed by the trial court judge. The controlling statute requires that, first, there be some reason for the appointment of a special prosecutor, and, second, that the court "by an order entered in the record" appoint such a special prosecutor.[10] In the case before us, pur-

---

[8] Sec. 943.25(2), Stats.

[9] Sec. 943.25(3), Stats.

[10] *See:* Sec. 59.44(1), Stats., providing: *"District attorney pro tempore; assistants in criminal and civil cases.* (1) When there is no district attorney for the county, or he is absent from the county, or has acted as counsel or attorney for a party accused in relation to the matter of which the accused stands charged and for which he is to be tried, or is near of kin to the party

suant to this statute, Robert Mubarak was appointed special prosecutor. However, he was not present to conduct the prosecution, and Attorney Gerald Laabs either was appointed in his stead, or, with consent of the trial judge, conducted the prosecution. There appears to be no "order entered in the record" as to such substitution.

■■ However, in performing the duties of prosecutor in this case, Attorney Laabs was a de facto district attorney *pro tempore*.[11] This is not the situation where one not licensed to practice law in this state acts as a prosecutor.[12] If objection to the conduct of the prosecution by a special prosecutor (with no entry made in the record as to his being appointed to such assignment) had been promptly made, either the entry in the record could have been made or the trial delayed for the appointment of another special prosecutor. But here there was no such objection. In fact, in its opinion accompanying the order denying postconviction relief, the trial court noted that defense trial counsel admitted he was aware of the questions concerning the appointment of the special prosecutor, but, "for strategy purposes," did not raise them

to be tried on a criminal charge, or is unable to attend to his duties, or is serving in the armed forces of the United States, or if the district attorney stands charged with a crime and the governor has not acted under s. 17.11, any judge of a court of record, by an order entered in the record stating the cause therefor, may appoint some suitable person to perform, for the time being, or for the trial of such accused person, the duties of such district attorney, and the person so appointed shall have all the powers of the district attorney while so acting."

[11] *Id.*

[12] *See: State v. Russell* (1892), 83 Wis. 330, 333, 334, 53 N.W. 441, holding a Minnesota resident attorney, not licensed to practice law in this state, could not serve as assistant district attorney, giving as the rationale: "'. . . It would be an anomaly, dangerous to the safe administration of justice, that the office [of prosecutor] should be filled by persons residing beyond the jurisdiction of the court, and practically not subject to its authority'" (Quoting *In re Mosness* (1876), 39 Wis. 509.)

during the progress of the trial. Counsel cannot follow one strategy during a trial, and then, for whatever reason, later complain if trial tactics turn out to be unsuccessful.[13] The right to complain as to the right of the special prosecutor to proceed was waived by the failure to raise the issue at time of trial.

The third claim of error made by the defendant is in regard to the court commissioner who issued the original criminal process in this matter. Defendant contends said commissioner could not validly issue the warrant because he was a partner in the law firm representing the bank which held the security interest in the automobile purchased by defendant. The relevant statute provides that: "A court commissioner . . . shall not act or take part in the decision of, or make any order in any matter or proceeding in which he is a party, or in which his rights would be in any manner affected by his decision or order thereon, or in which he is interested, or in which his law partner . . . shall be interested. . . ."[14] The attorney general contends that this language, admittedly broad, does not cover the situation before us. We do not reach the application of this statute to the instant case because we hold the right to object to the issuance of the criminal warrant was waived by this defendant.[15]

All ". . . defenses and objections based on defects in the institution of the proceedings . . . shall be raised before trial by motion or be deemed waived.

[13] *Cross v. State* (1970), 45 Wis.2d 593, 605, 173 N.W.2d 589, this court holding: "An accused cannot follow one course of strategy at the time of trial and if that turns out to be unsatisfactory complain he should be discharged or have a new trial."

[14] Sec. 256.23, Stats.

[15] It should be noted that this court does not condone the alleged practice of the court commissioner in this case and attorneys in this position should in the future be aware of the ethical implications attendant upon such practice.

. . ."[16] Therefore, defendant who has appeared in court with counsel without contesting the validity of his arrest " 'has waived the right to attack the arrest warrant.' "[17] In the case before us, defense trial counsel not only did not object before trial to the issuance of the criminal warrant, but made clear that he failed to object "for strategy purposes."[18] Clearly the right to claim error now was lost by the failure to object then.

Since this objection has been waived, it is not necessary to reach the merits of the claim. Nevertheless, a brief discussion is here in order. It is true that as to the hearing and determination of an action by an interested judge of a court of record, the statutes only permit such judge to proceed with "consent of the parties."[19] It is also true that such consent would not likely accompany the issuance of an arrest warrant by a statutorily disqualified judicial officer, since a person charged is not usually (and was not here) present at the time of the issuance of such initial criminal process. Thus there was no consent here.

However, we see a difference between a judge proceeding with a hearing or trial and a court commissioner issuing an arrest warrant. Recently our court recognized

[16] Sec. 971.31 (2), Stats.

[17] *Lampkins v. State* (1971), 51 Wis.2d 564, 570, 571, 187 N.W.2d 164, quoting *State ex rel. La Follette v. Raskin* (1966), 30 Wis.2d 39, 47, 139 N.W.2d 667.

[18] *See:* Trial court opinion stating: "Mr. Skolas [defense attorney] stated that he was aware of these two items [special prosecutor and court commissioner], but that for strategy purposes did not raise them during the progress of the trial." The trial court later stated: "At best if the objection had been made a part of the record, the Complaint would have been dismissed and a brand new Complaint made out and the defendant . . . could have been kept in custody until a new warrant was made out."

[19] Sec. 256.19, Stats., quoted and followed in *Rainey v. State* (1974), 65 Wis.2d 374, 376, 222 N.W.2d 620, 224 N.W.2d 194.

that difference when, while holding court commissioners could not conduct preliminary hearings in criminal cases, it held such deficiency in authority "not of constitutional proportions,"[20] and held that "the integrity of subsequent criminal trials has not been impaired by the procedure used."[21] Also, no serious questions were found concerning " 'the accuracy of guilty verdicts in past trials.' "[22] In the instant case we are dealing with the institution of proceedings stage rather than the trial stage. Since no constitutional error was found at the trial stage, it follows that no error of constitutional dimension is found here.

Rejecting each of the three claims of error raised on this appeal—i.e., sufficiency of the evidence, authority of the special prosecutor to conduct the prosecution and authority of the court commissioner to issue the criminal warrant—for the reasons stated above, we affirm the conviction of this defendant and dismiss the writs of error.

*By the Court.*—Judgment and order affirmed.

[20] *State ex rel. Perry v. Wolke* (1976), 71 Wis.2d 100, 109, 237 N.W.2d 678.

[21] *Id.* at page 111.

[22] *Id.* at pages 110, 111, quoting *Adams v. Illinois* (1972), 405 U.S. 278, 280, 92 Sup. Ct. 916, 31 L. Ed.2d 202.