STATE, Plaintiff-Respondent, v. LUNZ, Defendant-Appellant.†

Supreme Court

*No. 76–667–CR.  Argued November 29, 1978.—*
*Decided January 9, 1979.*
(Also reported in 273 N.W.2d 767.)

† Motion for reconsideration denied, without costs, on February 27, 1979.

696

For the appellant there were briefs and oral argument by *Thomas M. Kells* of Milwaukee.

For the respondent the cause was argued by *David J. Becker,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

COFFEY, J. The defendant was convicted following a trial to the court, Circuit Judge Milton L. Meister, presiding, for violating sec. 923.25(1), Stats., when, with intent to defraud, Lunz conveyed real property without informing the grantees of his knowledge that the property was encumbered. Motions to set aside the judgment of conviction or alternatively for a new trial were brought on the defendant's behalf before Reserve Circuit Judge John K. Callahan. The motions were denied.

The defendant, Michael R. Lunz, is the secretary-treasurer of two corporations: Ripco, Inc., a real estate development firm of Milwaukee, and Superior Home Builders, Inc., a general contracting company, also of Milwaukee. The complainants in this action are Kenneth Leitheiser and Robert Puerling, officers and directors of K & R Carpet Service. K & R entered into several contracts with Ripco for the installation of carpeting at various construction sites and thus Ripco was indebted to K & R in an amount of approximately $6,000. In November, 1974 Ripco agreed to convey to K & R certain property under construction at 505 Robin Street, West Bend, Wisconsin. The Robin Street property was to be conveyed in satisfaction of Ripco's debt to K & R. The offer to purchase additionally required K & R to pay $21,-000 in satisfaction of the outstanding mortgage on the property.

At the real estate closing Ripco was represented by one Scott Brockman, the real estate broker who drafted the offer to purchase. The buyers' attorney, Clement Conter reviewed and inserted into the offer an escrow clause calling for the safe keeping of the $21,000 until the designated escrow agent-title insurer issued a title policy insuring that the designated property was free and clear of all encumbrances. At the real estate closing it was agreed between the parties that if the conditions contained within the escrow agreement were not fulfilled

within 45 days after the date of closing, the grantee could declare the transaction void and ownership transferred back to Ripco. In that case, the property was to be conveyed with a quit claim deed or alternatively the grantee could choose to satisfy any outstanding liens from the monies held in escrow. It was further agreed that the $21,000 referred to in the escrow agreement was to be considered a condition subsequent and thus separate from the deed that was delivered at the closing and subsequently recorded. At the trial K & R's attorney (Conter) testified that at the closing Scott Brockman, Ripco's broker, stated there were only three unpaid subcontractors (identities not involved in this appeal). Allegedly, the attorney queried Lunz if these were the only unpaid subcontractors and Lunz reportedly replied in the affirmative. Lunz denies being asked this question or giving any similar information. Lunz denied any knowledge of whether at the time of closing there were any unpaid contractors other than those who had filed lien claims.

The day after the closing the broker secured the existing lien waivers from the defendant and had Lunz execute an affidavit which reads as follows:

"That the full waivers of lien of said prime contractor, subcontractor, or materialmen presented and delivered herewith to the Chicago Title Insurance Company are true, correct and genuine and are signed by the respective contractor, subcontractor or materialmen whose name appears thereon."

The lien waivers supplied by Lunz included those filed by Ed Mason Plumbing and Ernster Drywall Service. On November 20, 1974 the title insurer-escrow agent issued a preliminary report that stated a policy would be issued excepting from coverage any lien claims for which waivers had not been supplied. Relying on this report, K & R authorized the release of the $21,000 held in escrow.

Subsequently, the following four contractors, Falls Drywall, Inc., Schroeder Plumbing Co., Weyer and Becker Builders and Eastern Wisconsin Wholesale, filed notices of intent to file lien claims against the Robin Street property. Shortly thereafter, each of these four companies perfected its construction lien. These companies were in addition to the three unpaid contractors named at the closing. The criminal complaint issued against Lunz is based only upon the encumbrances created by the lien claims of Falls Drywall and Schroeder Plumbing. Lunz claimed that he took no part in the hiring of contractors for the Robin Street project and explained that this was done by Norman Schuman, a Superior Homes officer and expediter. Representatives of Falls Drywall and Schroeder Plumbing dispute Lunz's claims that he was not involved in their employment and subsequent dealings.

The attorney for K & R testified that in late 1974 or early 1975 he confronted the defendant with the actual drywall and plumbing claims and allegedly the defendant replied "We should not have done that." The record reflects a dispute as to whether the Mason plumbing and Ernster drywall companies, the names supplied by Lunz in the lien waivers, had performed any work or services at the Robin Street property. Robert Puerling, an owner of K & R and the buyer of the property, testified that in the spring of 1975, when he confronted the defendant with the discrepancies in the identity of the subcontractors named in the lien waivers, the defendant remarked, "Well, we did something we should not have done and we did not think you would catch up to us so quick."

There are 5 issues on appeal:

1. Under sec. 943.25(1), Stats., does the existence of an unperfected construction lien at the time of transfer constitute an encumbrance?

2. What effect, if any, does the existence of an escrow agreement have on the defendant's intent to defraud?

3. Was the evidence at trial sufficient to sustain the conviction?

4. Is sec. 943.25 (1), Stats., so indefinite and unclear as to be in violation of due process?

5. Is the defendant entitled to a new trial in the interest of justice by virtue of trial court error in refusing to allow the defendant additional time to obtain counsel for the trial?

The defendant was convicted of violating sec. 943.25 (1), Stats. (1975) *Transfer of Encumbered Property,* which reads:

"Whoever, with intent to defraud, conveys real property which he knows is encumbered, without informing the grantee of the existence of the encumbrance may be fined not more than $5,000 or imprisoned not more than 3 years or both."[1]

It is contended by the defendant that at the time of the real estate closing and thereafter the property at 505 Robin Street, West Bend was not encumbered. This argument is premised upon the belief that the subcontractors named in the criminal complaint failed to comply with the formal filing requisites of ch. 289, Liens, and therefore the construction lien claims forming the basis for the criminal complaint are not valid. It is maintained that the lien claims of Falls Drywall, Inc. and Schroeder Plumbing Co. were waived since they did not comply with the filing requirements of sec. 289.02 (2), Stats., by filing a notice of intention to file claim for construction lien within 60 days from the commencement of the work or from the time materials were supplied.

It is true that a construction lien is waived unless the provisions of ch. 289 are complied with and recited in

[1] Laws of 1977, ch. 173, sec. 70 makes the penalty a Class E felony which by sec. 3 of the enactment is punishable by a fine not to exceed $10,000 or imprisonment not to exceed 2 years, or both.

*Carl Miller Lumber Co. v. Elfers,* 164 Wis. 215, 159 N.W. 814 (1916) ; *Visser v. Koenders,* 6 Wis.2d 535, 95 N.W.2d 363 (1959) ; *Fullerton Lumber Co. v. Korth,* 23 Wis.2d 253, 127 N.W.2d 1 (1964) and *Mortgage Associates, Inc. v. Monona Shores, Inc.,* 47 Wis.2d 171, 177 N.W.2d 340 (1970). However, the defendant's arguments are not persuasive as we hold the notice provisions of sec. 289.02 (2) are inapplicable in this case. Sec. 289.02(1) (e) provides that sec. 289.02(2) notice filing is not required of a lien claimant under the following circumstances :

"By any lien claimant, other than a prime contractor, who furnishes labor or materials for an improvement on a project on which the prime contractor is not required to give notice under this section."

The legislature in enacting sec. 289.02(1) (d) has adopted construction lien filing requirements in accordance with accepted business practice in the construction trades. Consequently, sec. 289.02(1) (d) does not require a prime contractor to give lien notice in factual situations analogous to this case. The statute recites the following language :

"By any prime contractor who is himself an owner of the land to be improved, by any corporate prime contractor of which an owner of the land is an officer or controlling shareholder, by any prime contractor who is an officer or controlling shareholder of a corporation which is an owner of the land or by any corporate prime contractor managed or controlled by substantially the same persons who manage or control a corporation which is an owner of the land."[2]

It is evident from a review of the record that the owner of the property, Ripco, Inc., and the prime con-

---

[2] Lien laws are remedial in character and the statutes are to be liberally construed. *Builder Lumber Co. v. Stuart,* 6 Wis.2d 356, 94 N.W.2d 630 (1959).

tractor, Superior Home Builders, Inc., were controlled by "substantially the same persons." The defendant's brother, James Lunz, testified that the officers of Ripco were as follows: James Lunz, President; Ingeboard De Mario, Vice President and Assistant Secretary; Michael Lunz, Secretary-Treasurer; and the principal officers for Superior Homes were: James Lunz, President; Norman Schuman, Vice President; Michael Lunz, Secretary-Treasurer. Thus, pursuant to the statutes recited above, sec. 289.02(1)(e) and sec. 289.02(1)(d) and the evidence, Ripco, the property owner, and Superior Homes, the prime contractor, were controlled by substantially the same corporate officers. Therefore, we hold that Schroeder Plumbing and Falls Drywall were not required to file notices of intention to file lien claims in order to perfect at the time of closing an existing encumbrance insofar as the similar corporate identities of Ripco and Superior Homes gave these parties actual notice of the work performed.

We therefore must also reject the defendant's contention that the property was not encumbered. 42 C.J.S., *Incumbrance,* p. 549 (1944) states that "An encumbrance is any right or interest in land which may subsist in third persons to the diminution of the value of land though consistent with the passing of the fee by deed of conveyance." Obviously there is no dispute that a construction lien is an encumbrance; thus the only issue is when does the construction lien come into effect so as to constitute an "encumbrance" as contemplated by the wording of sec. 943.25(1).

In *Duitman v. Liebelt,* 17 Wis.2d 543, 549, 117 N.W.2d 672 (1962) it was held that the right to a lien arises on the first day material or labor is furnished. This was explained with specificity in *Stevens Construction Corp. v.*

*Draper Hall, Inc.,* 73 Wis.2d 104, 114, 242 N.W.2d 893 (1976) in the following terms.

"Stevens and the Bruce Company argue that their liens arose and became effective when the excavations began in September of 1971. They contend that no distinction should be made between when a lien arises and when a lien becomes effective. We agree with this proposition but it makes no difference in terms of the rights of the claimant-appellants in this case. The word 'effective,' in the context of construction liens, should be interpreted to mean 'capable of bringing about an effect.' A construction lien is capable of bringing about an effect at the time it arises, that is, when 'substantial excavation for the foundations' of the new project begin, as provided in sec. 289.01(4), Stats. The later events of giving notice and filing, as required by sec. 289.06, merely preserve and perfect a lien which is already effective in the sense of being capable of having an effect upon the liened land." *Id.* at 114.

The liens of Schroeder Plumbing and Falls Drywall were effective as an encumbrance on the date that work was performed or materials supplied.

The defendant's second claim of error is that the existence of the escrow funds overcomes the trial court's finding that the encumbered property was conveyed with an intent to defraud, a primary element of this crime. He argues that the escrow was established to prevent unfiled construction liens from clouding the property's title. Additionally, it is maintained that the unfiled subcontractor liens (Schroeder Plumbing and Falls Drywall) would have been timely discovered if the buyers, K & R, and the title insurer-escrow agent had adhered to the terms of the escrow agreement. The agreement provided that the $21,000 was to remain in escrow until 45 days after closing or until a title policy was issued guaranteeing marketable title. The funds were released with K & R's consent prior to the expiration of the 45-day waiting period. The title company-escrow agent agreed to issue

a title excepting from coverage unfiled lien claims. The subcontractor lien claimants listed in the criminal complaint filed their claims within the 45-day time period recited in the agreement, but after the release of the $21,000 sum.

This argument is unpersuasive. Criminal intent is inferred from a party's overt acts and conduct and inferences fairly deducible from the circumstances. *Gibson v. State,* 55 Wis.2d 110, 115, 197 N.W.2d 813 (1972); *Jacobs v. State,* 50 Wis.2d 361, 366, 184 N.W.2d 113 (1971); *State v. Guiden,* 46 Wis.2d 328, 332, 174 N.W.2d 488 (1970); *Strait v. State,* 41 Wis.2d 552, 559, 164 N.W.2d 505 (1969). The proof of intent to defraud is established in the following evidence: (1) that Lunz represented at the real estate closing and in the waiver of lien affidavit that all paid and unpaid contractors had been named; (2) that there was evidence that the defendant supplied lien waivers for a drywall and plumbing company who performed no services or work on the Robin Street property; (3) the testimony of representatives for Falls Drywall and Schroeder Plumbing testified that their companies had performed services and had personal dealings with the defendant; and (4) testimony referred to earlier in this opinion that the defendant acknowledged his wrongdoing when confronted in separate instances by the grantees and their attorney. While the defendant denies these allegations made against him, we have often stated that the determination of witness credibility is a function reserved to the trier of fact and that a verdict based upon the reconciliation of conflicting testimony and evidence will not be overturned unless the evidence and inferences which tend to support the verdict are incredible. *Ruiz v. State,* 75 Wis.2d 230, 249 N.W.2d 277 (1977); *Beavers v. State,* 63 Wis.2d 597, 217 N.W.2d 307 (1974).

Further, a victim's negligence is not a defense to criminal prosecution. Sec. 939.14, Stats., reads:

"Criminal conduct or contributory negligence of victim no defense. It is no defense to a prosecution for a crime that the victim also was guilty of a crime or was contributorily negligent."

The effect of a victim's negligence in the prosecution of criminal fraud was explained in *Lambert v. State,* 73 Wis.2d 590, 608, 243 N.W.2d 524 (1976):

"In civil fraud, a plaintiff is barred from recovery if he has failed to exercise ordinary care in discovering obviously fraudulent representations of the defendant. *Williams v. Rank & Son Buick, Inc.* (1969), 44 Wis.2d 239, 245, 246, 170 N.W.2d 807. In a criminal fraud prosecution, however, the negligence of the victim is not relevant to the defendant's guilt, although it is, of course, a necessary element of the crime that the false representation does, in fact, deceive the victim." (Citations omitted.) *Id.* at 608.

The great weight of the evidence supports the conclusion that the escrowed funds were released as a result of Lunz's misrepresentations in failing to disclose at the real estate closing the actual number and proper names of unpaid contractors and materialmen. The inference which supports the trial court's finding must be adopted if more than one inference can be drawn from the evidence. *Jameson v. State,* 74 Wis.2d 176, 181, 246 N.W.2d 541 (1976); *Bautista v. State,* 53 Wis.2d 218, 223, 191 N.W.2d 725 (1971).

The defendant also claims that pursuant to sec. 943.25 (1) that Ripco and not he personally conveyed the real estate in question. To the contrary, the record establishes the defendant was the signatory on behalf of Ripco not

only on the offer to purchase, but also on the escrow agreement and the deed. *State v. Laabs,* 40 Wis.2d 162, 161 N.W.2d 249 (1968) holds that an officer of a corporation will be held personally responsible for criminal acts done in the name of the corporation. Since a corporation is an individual existing only in contemplation of the law, its criminal acts are those of its officers and agents; and thus persons in control of a corporation and who knowingly acquiesce to the corporation's conveyance of encumbered realty may be personally prosecuted for the criminal act. Further, the defendant claims that there was not a conveyance of encumbered realty as the transfer is not supported by consideration. To the contrary, the satisfaction of the $6,000 debt due K & R from Ripco, as agreed upon in the offer to purchase, fulfills the requirement of legal consideration.

The overwhelming evidence revealed in the foregoing discussion precludes the necessity for an in depth review of the defendant's contention that the evidence was insufficient to sustain a conviction. We hold that the evidence received establishes the defendant's guilt beyond a reasonable doubt on each element of the conduct prohibited in sec. 943.25(1). Likewise, we reject the defendant's claim that sec. 943.25(1) is vague, indefinite and unclear so as to violate the defendant's constitutional right to due process. In order to succeed with a defense wherein statutory vagueness is claimed, the plain meaning of the statute has to be so obscure that people of "common intelligence must necessarily guess at its meaning and differ as to its applicability. . ." *Butala v. State,* 71 Wis.2d 569, 573, 239 N.W.2d 32 (1976); *State v. Killory,* 73 Wis.2d 400, 405, 243 N.W.2d 475 (1976). The terms and language of sec. 943.25(1) have precise legal meaning and definition, and are necessarily capable of appris-

ing a person of common intelligence of the nature and elements of the criminal activity.

Finally, the defendant alleges trial court error based upon its refusal to grant the defendant additional time to obtain trial counsel following the withdrawal of the defendant's first attorney. The record establishes that the defendant's trial counsel had at least one week to prepare and the record does not indicate that the defendant's trial counsel was ill-prepared or ineffective, nor was an adjournment sought on that basis. Accordingly, we hold that defendant and his trial counsel had ample time to prepare for trial even though the defendant's original attorney withdrew a week before trial. No prejudice has been shown to the satisfaction of this court nor do we hold the cumulative effect of the trial process warrants a new trial in the interests of justice. There is no error of any kind indicated in the record.

We hold that the defendant's conviction for the conveyance of encumbered property with an intent to defraud is sustained.

*By the Court.*—Judgment and order affirmed.