INDEPENDENT TRUST CORPORA-
TION, an Arizona corporation, as
trustee, Petitioner,

v.

STAN MILLER, INC., a Colorado corpo-
ration; Merrick & Company, a Colora-
do corporation; Raymond Strahlo
d/b/a Raymond Construction; Virginia
Drilling Co., Inc.; Schmeuser & Associ-
ates; Jonathan Rovick and Jeff Page
d/b/a Western Slope Forestry; Robert
A.M. Stern d/b/a Robert A.M. Stern
Architects; Breckenridge Resort Asso-
ciates, Inc., a Colorado corporation,
d/b/a Breckenridge Associates, Inc.;
Delaware Associates, Ltd., an Oregon
Limited partnership; and Breckenridge
Building Center, Respondents.

No. 89SC240.

Supreme Court of Colorado,
En Banc.

July 9, 1990.
Rehearing Denied Sept. 10. 1990.

**484**

Faegre & Benson, Diane B. Davies, Bosworth & Towey, P.C., Edward B. Towey, J. Scott Needham, Denver, for petitioner.

Bauer & Durkin, P.C., Douglas S. Durkin, Breckenridge, for respondents Stan Miller, Inc. and Robert A.M. Stern d/b/a Robert A.M. Stern Architects.

Alexander F. Rolle, Denver, for respondents Merrick & Co., Virginia Drilling Co., Inc., and Jonathan Rovick and Jeff Page d/b/a Western Slope Forestry.

Holme, Roberts & Owen, G. Kevin Conwick, Denver, for respondent Delaware Associates, Ltd.

French, West, Wood & Brown, P.C., John B. Wood, Breckenridge, for respondent Breckenridge Bldg. Center.

No appearances for respondents Raymond Strahlo d/b/a Raymond Const., and Breckenridge Resort Associates, Inc., a Colorado corp., d/b/a Breckenridge Associates, Inc.

Justice ERICKSON delivered the opinion of the court.

We granted certiorari to consider whether a blanket mechanics' lien should have been apportioned, and whether late charges contained in a contract between a landowner and contractor are entitled to the protection of the Colorado General Mechanics' Lien statutes. *See* §§ 38–22–101 to –133, 16A C.R.S. (1982 & 1989 Supp.). The court of appeals held that the district court did not abuse its discretion in refusing to order pre-sale apportionment or partial redemption of the property, and that petitioner Independent Trust Corporation (ITC) waived the issue of whether contractual late charges are lienable. *Stan Miller, Inc. v. Breckenridge Resort Assocs., Inc.,* 779 P.2d 1365 (Colo.App.1989). In the alternative, the court of appeals found that late charges were covered by the mechanics' lien statutes. *Id.* at 1370. It therefore affirmed the judgment of the district court on these issues.[1] We affirm the court of appeals on the apportionment and redemption questions, but reverse on the issues of waiver and lienability of contractual late charges.

I

Respondent Breckenridge Resort Associates, Inc. (BRAI) purchased approximately 1100 acres of land in Summit County from respondent Delaware Associates, Ltd., on February 28, 1985, for a total purchase price of $14,445,501. Two million dollars of the purchase price was provided by ITC by means of a loan to BRAI secured by a first deed of trust on somewhat less than ten percent of the property (ITC property), and a second deed of trust on the remaining 90% of the property (Delaware property), subject to a purchase money first deed of trust held by Delaware. The deeds of trust in effect partitioned the 1100 acres into two contiguous parcels. There is no evidence in the record, however, that BRAI or any of the other parties attached any

---

**1.** The court of appeals also reversed an award of attorney's fees in favor of respondent Delaware Associates, Ltd. *Stan Miller, Inc. v. Brecken-* *ridge Resort Assocs., Inc.,* 779 P.2d at 1370–71. *See* footnote 7 below.

significance to the division except for purposes of the deeds of trust.

BRAI intended to develop the 1100 acres in phases into a golf and residential resort community to be called Swan Valley. A master plan agreement between Delaware and the Town of Breckenridge, and later assigned to BRAI, reflects a desire to develop the property to a density of 1500 single-family equivalents. The first phase was the development of a large tract of the property located next to the Breckenridge Town golf course. The land to be developed in this first phase included the ITC property. BRAI agreed to construct a temporary clubhouse next to the golf course in order to obtain the town's consent to the formation of a metropolitan district encompassing Swan Valley.

All of the respondent mechanics' lien claimants were hired by BRAI for work on this Swan Valley project.[2] BRAI located its sales office in a wing of the temporary clubhouse. Unfortunately, BRAI ran into difficulties and none of the mechanics' lien claimants were paid. In addition, BRAI defaulted on its obligations to Delaware and ITC.

This mechanics' lien action was commenced in Summit County District Court on December 19, 1985, by respondent mechanics' lien claimants Stan Miller, Inc., Merrick & Company, and Robert A.M. Stern d/b/a Robert A.M. Stern, Architects. The action sought, inter alia, a declaration of the priorities and the amounts due the mechanics' lien claimants. The other respondent claimants, along with petitioner ITC and respondents Delaware and BRAI, were named as defendants. During the pendency of the action, Delaware and ITC foreclosed their first deeds of trust, and became the owners of the Delaware property and the ITC property respectively.

The first pretrial conference resulted in the first pretrial order being issued on January 6, 1985. Among other things, the order required the claimants, if they had

---

2. The mechanics' lien claimants consist of the following:

Breckenridge Building Center provided materials for the construction of the temporary clubhouse and was awarded a mechanics' lien on the property jointly with Raymond Strahlo d/b/a Raymond Construction in the principal amount of $28,240.08 plus interest and costs.

Merrick & Company is a Colorado corporation that provided engineering services for the property, including the preparation of a preliminary plat, and the determination of other legal descriptions necessary for the closing of the purchase of the property by BRAI. Merrick & Co. was granted a mechanics' lien for $21,084.57 plus interest and costs.

Jonathan E. Rovick and Jeff C. Page d/b/a Western Slope Forestry (WSF) marked and cut blighted trees on the property. The district court awarded WSF a mechanics' lien in the principal amount of $52,769.96 (including late charges) plus late charges accruing at $92.14 per day from December 12, 1986 until the judgment is paid. At the present time, the portion of WSF's lien attributable to late charges is in excess of $165,000.

Schmeuser & Associates performed engineering and surveying services on the property and has a mechanics' lien for $24,989.31 plus interest and costs.

Stan Miller, Inc., is a Colorado corporation that provided labor and materials for the construction of the parking lot, electrical trench, and driveway for the temporary clubhouse on the property. It also performed road construction work on partially finished roads it alleges are located mainly on the ITC property, although ITC maintains in their brief that the road construction work was performed on Delaware property. The district court concluded that Stan Miller had a valid mechanics' lien in the principal amount of $17,506.87. Stan Miller's lien, unlike all the other mechanics' liens, was awarded only against the ITC property as a result of a stipulation between BRAI and Stan Miller, and a joint motion of Delaware and Stan Miller.

Robert A.M. Stern d/b/a Robert A.M. Stern, Architects, prepared plans for the temporary clubhouse, for two buildings that were to be constructed, and performed comprehensive planning for the entire project. Stern was awarded a valid mechanics' lien against the property in the amount of $53,039.30 plus interest.

Raymond Strahlo d/b/a Raymond Construction built the temporary clubhouse and was awarded a mechanics' lien on the property jointly with Breckenridge Building Center in the principal amount of $28,240.08 plus interest and costs.

Virginia Drilling Company, Inc. drilled a well for the provision of water to the temporary clubhouse and has a mechanic's lien in the amount of $11,701.89 plus interest and costs.

The record indicates that the claims of WSF, Merrick & Co., Virginia Drilling, and Schmeuser & Associates have all been assigned to Lincoln West, Inc.

not already done so, to file affidavits setting out the amount of the mechanics' liens claimed and the material and labor expended. Any party opposing the amount, reasonableness, or the inclusion of non-lienable items in an affidavit filed by a claimant, was ordered to file a controverting affidavit setting out specific facts within twenty days after the claimant's affidavit was filed.[3] No affidavits of any kind were filed by ITC in response to the affidavits filed by the claimants, including WSF.

A second pretrial conference was requested to resolve the disagreements of counsel over the scope and effect of the first pretrial order. In this pretrial hearing on April 8, 1987, the district judge ruled that WSF's claims, and the other mechanics' lien claims, were "deemed admitted" since no responsive affidavits were filed by ITC.

At a pretrial motions hearing held on May 20, 1987, counsel for WSF made an oral motion for summary judgment which was immediately granted from the bench. The district court also granted summary judgment in favor of all the other claimants. A written judgment incorporating these rulings was entered by the court on June 23, 1987. The court held that the claimants were entitled to the full amount of the mechanics' liens claimed, that the mechanics' liens had priority over the deeds of trust held by Delaware and ITC,[4] and that, with the exception of Stan Miller's lien, the mechanics' liens extended over the entire 1100 acres.[5]

Following the oral granting of summary judgment, ITC moved the district court for the first time for pre-sale apportionment of the liens between Delaware and ITC on the basis of the respective acreage owned by each party.[6] The district court held a hearing on this motion and on Delaware's motion for distribution of the proceeds of the sale on August 17, 1987.

At the hearing, ITC's counsel stated that ITC was in the process of foreclosing on its

---

**3.** The specific provisions and operation of the first pretrial order are set out and discussed in detail in Part IV below.

**4.** In this court, ITC does not dispute that the mechanics' liens are entitled to priority over its first deed of trust on the ITC property.

**5.** The petitioner contended in the court of appeals that the district court erred in determining that the mechanics' liens extended to the entire property. The court of appeals rejected this argument, holding that, "[a]bsent proof to the contrary, it is presumed that the land described by a mechanics' lien claimant in his complaint is necessary for the convenient use and occupancy of the improvement. *Seely v. Neill,* 37 Colo. 198, 86 P. 334 (1906)." *Stan Miller, Inc. v. Breckenridge Resort Assocs., Inc.,* 779 P.2d at 1368. *See* § 38-22-103(1), 16A C.R.S. (1982), which provides:

Attaching of lien—enforcement. (1) The liens granted by this article shall extend to and cover so much of the lands whereon such building, structure, or improvement is made as may be necessary for the convenient use and occupation of such building, structure, or improvement, and the same shall be subject to such liens. In case any such building occupies two or more lots or other subdivisions of land, such several lots or other subdivisions shall be deemed one lot for the purposes of this article, and the same rule shall hold in cases of any other such improvements that are practically indivisible, and shall attach to

all machinery and other fixtures used in connection with any such lands, buildings, mills, structures, or improvements.

The court of appeals found that the record more than adequately supported the district court's conclusion that the work performed by the claimants benefitted the entire property. *Stan Miller, Inc. v. Breckenridge Resort Assocs., Inc.,* 779 P.2d at 1368. In this court, ITC does not contest the finding that the work benefitted the property as a whole.

**6.** In paragraph 11 of its "Motion to Supplement Order of May 20, 1987 (With Authority)," filed June 4, 1987, ITC stated:

The Court has determined that all the land—the entire 1,100 acres—has benefitted from the work done by the mechanic's lien claimants in this case. It is respectfully submitted therefore, that the Court should determine the proportionate amount of the total benefit received by each of the two properties. *Independent suggests that each property has benefitted in direct proportion to the percentage of the total acreage which it encompasses. In other words, since Delaware owns approximately 90.91% of the land, it should be deemed to have received the same percentage of the total benefit and should be burdened with 90.91% of the liens.*

In paragraph 12 of the motion, ITC asked the court to "take evidence on that issue prior to any sale of the properties," if "some other method of apportionment would better achieve the equitable results intended...."

first deed of trust and that an appraisal revealed that Delaware now owned over 94% of the property, rather than the presumed 90 or 91%. Counsel for ITC then offered the testimony of an appraiser as to the value of the property as a whole ($9.375 million), and the value of the Delaware property ($8.975 million). The district court refused to admit the testimony, finding it irrelevant because ITC in its motion asked for apportionment based on acreage, not value. The district court found the language in the motion asking the court to take evidence on some other appropriate method of apportionment too general to preserve the issue. The court then denied the motion for pre-sale apportionment and granted Delaware's motion for distribution of the proceeds following the sale.[7] The district court ordered a foreclosure sale of the property as a whole. On appeal, the court of appeals affirmed the district court's judgment except for the award of attorney's fees to Delaware. *See* footnote 7.

## II

■■■ ITC first contends that the district court erred in failing to order pre-sale apportionment of the mechanics' lien claims. The right to a mechanics' lien is wholly a creature of statute,[8] and although all fifty states recognize some form of mechanics' lien, the statutes have significant differences. *See* 3 R. Powell & P. Rohan, *Powell on Real Property* ¶ 483, at 735 (1990). Thus in interpreting the Colorado mechanics' lien law, cases from other jurisdictions should be approached with caution. Section 38–22–103(4) provides:

(4) Whenever any person furnishes any materials or performs any labor, or both, for the erection, construction, addition to, alteration, or repair of two or more buildings, structures, or other improvements, when they are built and constructed by the same person and under the same contract, it is lawful for the person so furnishing such materials or performing such labor to divide and apportion the same among the buildings, structures, or other improvements in proportion to the value of the materials furnished for and the labor performed upon or for each of said buildings, structures, or other improvements and to file with his lien claim therefor a statement of the amount so apportioned to each building, structure, or other improvement. This lien claim when so filed may be enforced under the provisions of this article in the same manner as if said materials had been furnished and labor performed for each of said buildings, structures, or other improvements separately; *but if the cost or value of such labor and materials, or either, cannot be readily and definitely divided and apportioned among the several buildings, structures, or other improvements, then one lien claim may be made, established, and enforced against all such buildings, structures or other improvements, together with the ground upon which the same may be situated, and in such case for the purposes of this article, all such buildings, structures, and improvements shall be deemed one building, structure, or improvement, and the land on which the same are situated as one tract of land.*

---

7. The district court also awarded attorney's fees to Delaware based on ITC's assertion of what the court perceived to be a groundless defense— that all the improvements had actually been made on property owned by the Town of Breckenridge. The court of appeals reversed the award of attorney's fees. *Stan Miller, Inc. v. Breckenridge Resort Assocs., Inc.,* 779 P.2d at 1370–71. This part of the court of appeals judgment is not before us.

8. Mechanics' liens are not derived from English law and were unknown at common law. *Tubri-*

*dy v. Wright,* 144 N.Y. 519, 521, 39 N.E. 640, 641 (1895). The prototype mechanics' lien statute was enacted by the General Assembly of Maryland in 1791 in response to a request from the Commission that was established to supervise construction of the capitol in Washington. This first statute was limited to the city of Washington and applied only to persons having direct contractual relations with the owners of the land benefitted. *See McNab & Harlin Mfg. Co. v. Paterson Bldg. Co.,* 71 N.J.Eq. 133, ——, 63 A. 709, 710–11 (1906); 3 R. Powell & P. Rohan, *Powell on Real Property* ¶ 483, at 733–34 (1990).

(Emphasis added.) This subsection, which permits a lien claimant to apportion the lien if possible, also allows the claimant to file a blanket lien if the work "cannot be readily and definitely divided and apportioned...." In *Buerger Investment Co. v. B.F. Salzer Lumber Co.*, 77 Colo. 401, 407, 237 P. 162, 165 (1925), we interpreted the predecessor to subsection 38–22–103(4) and said:

> The reasonable, liberal and equitable construction of these terms is that the claimant may apportion where possible; if impossible, he must spread his blanket, but if apportionment is possible, yet cannot readily be made, he may choose whether he will apportion or file a blanket lien.... We think [a claimant] may in good faith choose the blanket lien and make his statement so, and, if it turns out that an apportionment is readily possible and the court deems it equitable to all parties, it may be had in the decree.

*See also Plateau Supply Co. v. Bison Meadows Corp.*, 31 Colo.App. 205, 212, 500 P.2d 162, 167 (1972) (where work was done as a part of the entire project and could not be "readily and definitely divided," it was proper to file a mechanics' lien against the entire project). Subsection 38–22–103(4), and our interpretation of it, is in accord with the general rule that a blanket mechanics' lien upon several properties for materials and labor benefitting the properties may not be enforced against less than all of the properties in the absence of some showing of proper apportionment. *See* Annotation, *Enforceability of Single Mechanic's Lien Upon Several Parcels Against Less Than the Entire Property Liened*, 68 A.L.R.3d 1300, 1303 (1976 & Supp.1989).

■ The questions for decision are whether ITC presented sufficient evidence to establish that the claimants' work could be "readily and definitely divided" between the ITC property and the Delaware property; or whether equity and good conscience required apportionment, *see Associated Sand & Gravel Co. v. DiPietro*, 8 Wash. App. 938, 943, 509 P.2d 1020, 1024 (1973).

We agree with the court of appeals in the conclusion that ITC failed to discharge its burden of proof on either issue. ITC introduced no evidence on how the materials provided and labor performed by the claimants could be readily divided between the ITC and Delaware properties. At most, ITC asked for apportionment based on the relative acreage, and attempted to introduce evidence of the relative values of the two parcels after foreclosure of the deeds of trust. Neither of these methods was sufficient as a matter of law to demonstrate that the value of the *work* was readily divisible.

■ Nor has ITC satisfied its burden of showing that the district court should nevertheless in equity and good conscience have apportioned the liens. *Cf. Joralmon v. McPhee*, 31 Colo. 26, 39–40, 71 P. 419, 423 (1903). Any showing made by ITC that failure to apportion may result in unfairness to ITC is outweighed by the equities in favor of the mechanics' lien claimants, who performed their work in 1984 and 1985 and still have not been paid, and by the failure of ITC to present a reasonable and consistent method of apportionment. Absolute fairness *inter sese* the owners of the property liened is not a priority of the general mechanics' lien law. *See Howard v. Fisher*, 86 Colo. 493, 519, 283 P. 1042, 1052 (1929) ("The [mechanics' lien] statute contemplates a speedy determination of claims, to the end that mechanics' lienors will not have to wait indefinitely for their money, or for experiments in legal procedure.").

The cases cited by ITC to support apportionment are distinguishable. In *Brunzell v. Lawyers Title Insurance Corp.*, 101 Nev. 395, 705 P.2d 642 (1985), the Nevada Supreme Court held that the trial court did not err in ordering apportionment of mechanics' liens on a condominium project where there was no evidence that the cost of the project was not equally divisible among the units. In contrast, the property here, as the district court found, was benefitted as a whole by the work performed, and the value of the work was not readily divisible by units.

In *Sebastian Building & Loan Association v. Minten*, 181 Ark. 700, 27 S.W.2d 1011 (1930), and *Manchester Iron Works*,

*Inc. v. E.L. Wagner Construction Co.*, 341 Mo. 389, 107 S.W.2d 89 (1937), the courts confirmed the equitable power of a trial court to apportion or allocate the value of materials and labor provided under a contract to more than one house. At the time the mechanics' lien claimants tried to enforce their liens, the houses had passed into the hands of third parties. It was possible to determine with reasonable certainty the value of the work performed on each house, and apportionment was justified to prevent inequity to the third parties. These cases are not inconsistent with the result here.

*West Alexandria Properties, Inc. v. First Virginia Mortgage and Real Estate Investment Trust*, 221 Va. 134, 267 S.E.2d 149 (1980) and *PIC Construction Co. v. First Union National Bank of North Carolina*, 218 Va. 915, 241 S.E.2d 804 (1978) dealt with the partial release of a mechanics' lien claim and the subsequent attempt by the claimant to enforce the lien against the remainder of the property. Both cases are inapposite to the issues presented here.[9]

We conclude that, on this record, the district court did not abuse its discretion in refusing to order pre-sale apportionment of the mechanics' liens.

### III

ITC next argues that the district court erred in ordering a sale of the entire property without allowing partial redemption.[10] The general rule in Colorado is that, in the absence of a statute to the contrary, property sold as a whole must be redeemed as a whole. *Walker v. Wallace*, 79 Colo. 380, 384–85, 246 P. 553, 554 (1926); *Pheney v. Western Nat'l Bank*, 762 P.2d 693, 695 (Colo.App.1988). Redemption by an owner of property sold at a lien foreclosure sale is governed by section 38–39–102, which provides that

> within seventy-five days after the date of the sale of real estate by virtue of any foreclosure of a ... lien ..., the owner of the premises ... may redeem the premises sold by paying to the public trustee, sheriff, or other proper officer the sum for which the property was sold, with interest ... together with any taxes paid or other proper charges as now provided by law, and a certificate of redemption shall be executed by the proper officer....

§ 38–39–102(1), 16A C.R.S. (1989 Supp.). Partial redemption is not contemplated by section 38–39–102. ITC contends, however, that our decision in *First National Bank v. Energy Fuels Corp.*, 200 Colo. 540, 618 P.2d 1115 (1980), which carved out an exception to the total redemption doctrine, required the district court to allow partial redemption of the ITC property.

We disagree. The right to partial redemption in *Energy Fuels Corp.* turned on the redemption rights under section 38–39–103 of a junior lienor with a lien on only one joint tenant's interest in the property. We decline to extend the holding in *Energy Fuels Corp.* to require partial redemption whenever more than one landowner is entitled to statutory redemption. The district court did not err in refusing to order partial redemption before the sale was held.[11]

---

**9.** While these cases might conceivably have had some application to the partial release of Stan Miller's mechanics' lien on the Delaware property, ITC has not argued in this court that the district court erred in allowing the partial release. Rather, ITC points to the release and resultant "apportionment" of Stan Miller's lien as evidence that apportionment is possible. The court of appeals found it unnecessary to reach any issues involving the "apportionment" of Stan Miller's lien. *See Stan Miller, Inc. v. Breckenridge Resort Assocs., Inc.*, 779 P.2d at 1371.

**10.** The court of appeals held that ITC had waived any argument that the ITC and Delaware properties should be sold separately by failing to present that issue in an objection to the district court. *Stan Miller, Inc. v. Breckenridge Resort Assocs., Inc.*, 779 P.2d at 1369. ITC has not argued or briefed the issue of separate sales in this court.

**11.** In its brief, ITC presents us with a hypothetical situation where both ITC and Delaware tender the payment required for total redemption. ITC claims that such a situation would create a paradox, the only way out of which is partial redemption. Such a situation is at this point purely theoretical and we decline to speculate in appropriate remedies in the absence of a concrete situation. In addition, we reject

## IV

Finally, ITC argues that WSF's contractual late charges are not entitled to the protection of the general mechanics' lien law. In particular, late charges are not subject to a mechanics' lien because they are not related to the "value of ... services rendered or labor done or material furnished...." § 38–22–101(1), 16A C.R.S. (1982).[12] The court of appeals found that ITC waived the defense of non-lienability by not filing an affidavit in response to the affidavit of WSF. In the alternative, the court of appeals held that contractual late charges are subject to the mechanics' lien law. We take up first whether ITC waived the defense.

## A

■ In its "Counterclaim and First Cross–Claim," WSF alleged that:

2. On or about June 15, 1985, Defendant WSF and Defendant BRA [Breckenridge Resorts Associates, Inc.] entered into a written contract ... whereby WSF furnished materials and labor for the improvement of the described real property.

. . . .

4. BRA agreed to pay WSF $3,198.00 for materials and labor provided plus a late charge of $1.00 per acre per week ($645.00 per week) until BRA's debt to WSF was paid.

5. As of February 1, 1986, late charges total $20,640.00 which amount continues to accrue at the rate of $92.14 per day.

. . . .

10. There is due to WSF, the sum of $3,198.00 for labor and materials, together with accrued late charges as alleged above, $72.00 for the cost of recording plus appropriate interest, and the cost of this action.

11. WSF, is entitled to interest at 8% per annum pursuant to C.R.S. Section 5–12–102 or, in the alternative, is entitled to interest at 12% per annum pursuant to C.R.S. Section 38–22–101(5).

The idea that ITC waived any defense relating to lienability of late charges is based on the district court's first pretrial order, dated January 6, 1987, which stated, in part:

AND IT IS FURTHER ORDERED, that any party asserting a claim for foreclosure of mechanic's lien, shall within twenty days of December 5, 1986, file an affidavit setting forth the amount claimed, and incorporation of materials and labor in the project; those lien claimants already having filed such an affidavit in support of motions for summary judgment need not file another affidavit. Within twenty days of the date on which mechanic's lien claimant affidavits are filed with the court, or, in the case of those claimants who filed their affidavits with their motions for summary judgment, within twenty days of December 5, 1986 or the date on which a response to the motion for summary judgment is due, if that date is later, any party opposing the mechanic's lien claims shall file responding affidavits setting forth specific facts disputing the matters set forth in the affidavit filed by the lien claimants. *Any party asserting affirmative defenses regarding the inclusion of non-lienable items in a mechanic's lien claim must provide specific facts in its affidavit filed in response to the mechanic's lien claimant's affidavit; failure to incorporate such specific facts in a responsive affidavit shall constitute waiver of any and all defenses regarding inclusion of non-lienable items in a mechanic's lien claim.* Likewise, any party asserting an affirmative defense, counterclaim or cross-claim founded upon a claim of an excessive lien must support that excessive lien claim in its responsive affidavit with specific facts; failure to file an affidavit supporting a claim of an excessive lien shall constitute waiver of any and all claims, cross-claims and af-

---

ITC's premise that the only solution is partial redemption.

**12.** WSF has not argued that the contractual late charges constitute contractual interest under section 38–22–101(5).

firmative defenses founded upon an assertion of an excessive lien. *Except as otherwise provided in this order, issues for trial on the aforementioned matters required to be set forth by responsive affidavits shall be limited to the specific grounds and matters asserted in those affidavits; all other facts concerning those matters shall be deemed admitted.* Stan Miller, Inc. v. Breckenridge Resort Assocs., Inc., No. 85CV588, slip op. at 2–3 (Dist.Ct. Jan. 6, 1987) (pretrial order) (emphasis added). ITC objected to the proposed pretrial order in a letter from ITC's counsel dated December 22, 1986. All of counsel's objections were incorporated into the order.

Following the pretrial order, WSF filed the affidavit of Jonathan E. Rovick, dated January 7, 1987. It states in relevant part:

COMES NOW the undersigned Jonathan E. Rovick, being first duly sworn, and states as follows:

1. Jonathan E. Rovick and Jeff C. Page, d/b/a/ Western Slope Forestry ("WSF") provided tree clearing services on the real property that is the subject of this action pursuant to contract with defendant Breckenridge Resort Associates, Inc. These services were incorporated into the project.

2. As of December 12, 1986, WSF is owed $52,769.96 for services rendered and accrued late charges, plus recording costs in the amount of $72.00 and filing fees in the amount of $75.00, for a total of $52,916.96. WSF has also incurred attorneys' fees in an amount to be proven at trial.

3. Late charges continue to accrue at the rate of $92.14 per diem.

ITC filed no affidavit in response to the WSF affidavit, although BRAI did file an affidavit that challenged the amount of WSF's charges in general. In a motion for summary judgment filed on January 23, 1987, ITC did not specifically dispute the validity of WSF's late charges. The motion alleged that ITC's first deed of trust was entitled to priority over the mechanics' liens, and raised the issue whether the liens could be maintained against the whole of the property.

In a motion requesting a second pretrial conference, WSF noted that ITC

failed to submit any affidavits in opposition to the mechanic's lien affidavits that were filed. Accordingly, these lien claimants and the other lien claimants in this case maintain that Independent Trust Corporation is now foreclosed from presenting any defenses to the mechanic's lien claims at trial. Nevertheless, counsel for defendant Independent Trust Corporation has indicated that she regards all defenses as open to Independent Trust Corporation.

On March 9, 1987, ITC filed a "Reply Brief in Response to Responsive Brief of Merrick and Others [including WSF] in Opposition to Independent's Motion for Summary Judgment." It stated in part:

The instant claimants also mischaracterize the Affidavit process called for by the written Pretrial Order entered by the Court. That order did not, as the instant claimants contend, require opposing Affidavits on the issues of the quality, scope and priority of the claimant's work. It required such Affidavits only on "the amount claimed and incorporation of materials and labor in the project", and that was what was done. The issues of priority, and which land and to what extent, if any, the liens attached thereto, were to be encompassed in the Motion for Summary Judgment directed to be filed by Independent Trust. *The question of the reasonableness of the amounts claimed, being a legal one, was, by its very nature, left to be resolved by the Court at trial.*

(Emphasis added.) The remainder of the brief addressed the issues of priority and whether the liens should extend to the entire property.

Because of the disagreements of counsel over the scope and effect of the first pretrial order, a second pretrial conference was held on April 8, 1987. At this conference, counsel for ITC brought up the matter of the "reasonableness" and lienability of WSF's late charges, but the district

judge, who was not the judge who presided at the first pretrial, ruled that those claims, and the other mechanics' lien claims, were "deemed admitted" since no responsive affidavits were filed by ITC.

At a pretrial motions hearing held on May 20, 1987, the district court reiterated that, based on the first pretrial order, ITC had waived the issues of the "validity of the mechanic's liens and the reasonableness of the values, as well as the priority of those mechanic's liens over that of I.T.C.'s deed of trust," and granted WSF's motion for a summary judgment.

We conclude that ITC did not intend to waive the defense that WSF's late charges were non-lienable. The record reveals that ITC's counsel consistently maintained that the pretrial order did not require her to file an affidavit opposing the inclusion of the late charges because she believed that the lienability issue was one of law for the court to decide which would not be decided on the basis of specific facts in an affidavit. Counsel for ITC was wrong. The plain import of the pretrial order was to require ITC to file opposing affidavits to preserve the issue of inclusion of non-lienable items.

■ Pretrial conferences and orders are tools for simplifying the issues with an eye toward ultimately resolving lawsuits on the merits, not methods for avoiding trials altogether. *See Padovani v. Bruchhausen,* 293 F.2d 546, 548 (2d Cir.1961) [13]; *Glisan v. Kurth,* 153 Colo. 102, 108, 384 P.2d 946, 949 (1963). The rule governing summary judgment is Rule 56 and the affidavit filed by WSF by itself did not entitle WSF to judgment as a matter of law on the matter of late charges. *See Ginter v. Palmer & Co.,* 196 Colo. 203, 206, 585 P.2d 583, 585

(1978). Summary judgment was proper, therefore, only if the district court had the power to modify the requirements of Rule 56 through the pretrial order entered pursuant to Rule 16, either inherently or with the consent of ITC.

Assuming without deciding that a pretrial order under C.R.C.P. 16 can have the effect of dispensing with the requirements of Rule 56 for summary judgment,[14] we find that under the facts of this case, the pretrial order should have been modified to allow ITC to contest the lienability of the late charges to prevent manifest injustice. *Ferguson v. Hurford,* 132 Colo. 507, 520, 290 P.2d 229, 236 (1955).

A number of factors have entered into our conclusion. First, in the absence of the pretrial order, ITC would not have been required to file a controverting affidavit to raise the issue of the inclusion of late charges, since the issue is purely one of law. Second, counsel for ITC consistently maintained, albeit mistakenly, that the pretrial order did not require her to file an affidavit to preserve the legal defense to the lienability of late charges. Third, the court granted WSF's oral motion for summary judgment from the bench apparently catching ITC's counsel unawares and without allowing for a response from ITC. Fourth, the consequences of counsel's mistake would fall heavily on the client. There is nothing in the record to show that ITC intended to waive the defense of lienability to late charges, or directly participated in disobeying the pretrial order so as to share in the blame. Fifth, we hold that the contractual late charges here are not lienable under section 38–22–101, and the

---

**13.** As Judge Charles Clark, one of the authors of the Federal Rules of Civil Procedure, stated:

> [R]ule [16] calls for a *conference* of counsel with the court to *prepare* for, not to avert, trial, leading to an order which shall recite the "agreements made by the parties as to any of the matters considered." It is subordinate and conciliatory, rather than compulsive, in character. Nothing in the rule affords basis for clubbing the parties into admissions they do not willingly make; but it is a way of advancing the trial ultimately to be had by setting forth the points on which the parties are agreed after a conference directed by a trained judge.

*Padovani v. Bruchhausen,* 293 F.2d at 548.

**14.** *See generally* 6A C. Wright, A. Miller & M. Kane, *Federal Practice & Procedure* § 1529 (1990), on the similarities and differences between Fed.R.Civ.P. 16 and 56. The authors state that "the use of Rule 16 to determine whether there are any issues remaining in the case that justify proceeding to a full trial on the merits is not inconsistent with the general purpose of Rule 16." 6A C. Wright, A. Miller & M. Kane, *supra,* § 1529, at 301.

settling of this issue is of importance beyond the interests of the parties in this case, so the defense is meritorious. Finally, consideration of the non-lienability defense will not unduly prejudice WSF or the other appellees, or result in further delay, since a trial will not be required. The issue can be decided as a pure question of law, and remand is unnecessary because the court of appeals has already considered the lienability issue on the merits.

### B

■ The court of appeals determined that contractual late charges were entitled to inclusion in the mechanics' lien claim because in situations where "it is undisputed that the lien claimant fully performed its contract with the owner, the claimant is entitled to the entire contract price." *Stan Miller, Inc. v. Breckenridge Resort Assocs., Inc.*, 779 P.2d at 1370. The court of appeals holding was based on their interpretation of section 38–22–101(2), which provides:

> In case of a contract for the work, between the reputed owner and a contractor, the lien shall extend to the entire contract price, and such contract shall operate as a lien in favor of all persons performing labor or services or furnishing materials under contract, express or implied, with said contractor, to the extent of the whole contract price; and after all such liens are satisfied, then as a lien for any balance of such contract price in favor of the contractor.

On the other hand, subsection 38–22–101(1) states that a lien claimant is entitled to a lien in the amount of the "value of ... services rendered or labor done or material furnished...."

■ There does at first blush appear to be a conflict between subsections (1) and (2), but it is our duty to attempt to harmonize if possible the subsections in order to give effect to the statute as a whole. § 2–4–201(1)(b), 1B C.R.S. (1980); *Martinez*

*v. Continental Enters.*, 730 P.2d 308, 315 (Colo.1986). As to its remedial provisions, the mechanics' lien law should be liberally construed in favor of the lien claimant, but it must be strictly construed in determining whether the right to a lien exists. *Schmidt Constr. Co. v. Fast*, 776 P.2d 1175, 1176 (Colo.App.1989); *Lindemann v. Belden Consol. Mining & Milling Co.*, 16 Colo.App. 342, 346, 65 P. 403, 404 (1901).

Until the court of appeals opinion in this case, the case law had limited a mechanics' lien claimant's recovery to the value of the materials, labor, or services provided. *Thirteenth St. Corp. v. A–1 Plumbing & Heating Co.*, 640 P.2d 1130, 1133–34 (Colo. 1982); *Heating & Plumbing Eng'rs v. H.J. Wilson Co.*, 698 P.2d 1364, 1367 (Colo.App. 1984). The court of appeals in this case distinguished *Heating & Plumbing Engineers* on the basis that the contract in that case had not been entirely performed. While that is a factual difference between the cases, the court of appeals reads the holding in *Heating & Plumbing Engineers* too narrowly.

We agree with the court of appeals in *Heating & Plumbing Engineers* that subsection (2) must be read in conjunction with subsections (1) and (3). Subsection (2) does not enlarge the rights of a contractor to a mechanics' lien for the full contract price over and above the value of the materials provided and services and labor performed. Rather, if the owner timely records the contract pursuant to subsection 38–22–101(3), the contract price becomes a ceiling for the total amount of mechanics' liens that can be asserted against the property arising out of the contract. § 38–22–101(3), 16A C.R.S. (1982); *Stewart v. Talbott*, 58 Colo. 563, 574, 146 P. 771, 775 (1915).[15]

When there is a written contract between the owner of the property and the lien claimant for labor to be performed and materials to be used on the property sought to be charged, and when the labor

---

15. In its opinion, the court of appeals cites *Stewart v. Talbott*, 58 Colo. 563, 146 P. 771 (1915) for the proposition that when there is a contract that is fully performed, the mechanics' lien claimant is entitled to a lien for the full amount of the contract price. The case will not support this interpretation.

is actually performed and the materials are used on the property, *cf. Heating & Plumbing Eng'rs, Inc. v. H.J. Wilson Co.,* 698 P.2d at 1367, the contract price is a good indication of the value of the goods and labor entitled to the lien. Late charges are not mentioned as items lienable under the statute, and thus WSF's lien may not extend to the late charges.[16]

Accordingly, we affirm the judgment of the court of appeals with respect to the issues of apportionment and partial redemption. We reverse the judgment of the court of appeals insofar as it affirmed the district court's inclusion of late charges in the mechanics' lien awarded to WSF. We return the case to the court of appeals for remand to the district court for further proceedings consistent with this opinion.

---

**16.** Of course, nothing in this opinion prevents WSF from collecting the late charges for breach of the contract between BRAI and WSF. *See* § 38–22–124, 16A C.R.S. (1982).