In re the MARRIAGE OF Lucia
C. CARGILL, f/k/a Lucia
C. Rollins, Appellee,

and

Donald R. ROLLINS, Appellant.

No. 90CA1195.

Colorado Court of Appeals,
Div. B.

Oct. 10, 1991.

Rehearing Denied Nov. 7, 1991.

Certiorari Granted March 10, 1992.

Frey, Lach & Michaels, P.C., Susan M. Lach, Fort Collins, for appellee.

Wood, Herzog, Osborn & Bloom, P.C., Charles S. Bloom, Jennifer J. Stocker, Fort Collins, for appellant.

Opinion by Judge SILVERSTEIN *

In this dissolution of marriage proceeding concerning Donald R. Rollins (husband) and his former wife, Lucia C. Cargill (wife), husband appeals the trial court order that reinstated the award of maintenance to wife after her second marriage was annulled. We reverse.

The marriage of the parties was dissolved in 1985. Their separation agreement provided for the payment of unallocated family support to continue for a period of six years unless earlier terminated by wife's death or remarriage. In September 1988, wife remarried, and husband ceased making maintenance payments.

Wife's second marriage was declared invalid in December 1989 based on fraud going to the essence of the marriage pursuant to § 14–10–111(1)(d), C.R.S. (1987 Repl. Vol. 6B). Thereafter, wife filed a motion to reinstate her maintenance.

The trial court found that, pursuant to § 14–10–111(5), C.R.S. (1987 Repl.Vol. 6B), a marriage declared invalid is void *ab initio.* It also concluded that the case of *Torgan v. Torgan,* 159 Colo. 93, 410 P.2d 167 (1966), although decided before the Uniform Dissolution of Marriage Act was adopted, did not preclude reinstatement of maintenance which was otherwise appropriate. Accordingly, the court made further

findings relevant to the determination of wife's need for maintenance and concluded that maintenance should be reinstated retroactive to the date of wife's second marriage.

## I.

■ The sole issue on appeal is whether a former maintenance obligation is reinstated when a remarriage is declared invalid. We hold that it is not.

Section 14–10–122(2), C.R.S. (1987 Repl. Vol. 6B) provides that:

"Unless otherwise agreed in writing or expressly provided in the decree, the obligation to pay future maintenance is terminated upon the death of either party or the remarriage of the party receiving maintenance."

Furthermore, § 14–10–111(6), C.R.S. (1987 Repl.Vol. 6) provides that the provisions of Article 10 relating to the property rights of spouses, maintenance, and support and custody of children on dissolution of marriage are applicable to decrees of invalidity of marriage.

The issue of whether, and under what circumstances, the annulment of a remarriage may result in the revival or reinstatement of a prior husband's obligation to provide spousal support has produced varying results supported by conflicting rationales. *See* Annot., *Annulment of Later Marriage As Reviving Prior Husband's Obligations Under Alimony Decree or Separation Agreement,* 45 A.L.R.3d 1033 (1972).

However, contemporary cases generally treat the effect of annulment as analogous to the effect of divorce, and by that analysis, the better reasoned cases hold that the annulment of the wife's second marriage would not revive her rights under the alimony decree. 2 H. Clark, Jr., *The Law of Domestic Relations in the United States* § 17.6(4) at 285 (2d ed. 1987).

In New York, a statute providing that, in an annulment action, a court may order the

---

* Sitting by Assignment of the Chief Justice under provisions of the Colo. Const., art. VI, Sec. 5(3),

and § 24–51–1105, C.R.S. (1988 Repl.Vol. 10B).

support of a wife "as justice requires" has been recognized as a legislative choice to attach to an annulled marriage, without regard to whether it is void or voidable, sufficient validity and significance to support an award of spousal support. *Gaines v. Jacobsen*, 308 N.Y. 218, 124 N.E.2d 290 (1954).

The *Gaines* court reasoned that, because by statute the wife can receive support from the husband of the annulled marriage, there is no more reason to revive the obligation of the first husband than there would be if the remarriage were terminated by divorce. Rather, the interests of justice require that, as between successive husbands, the wife look to the last one for support and that she be given neither two sources of support nor the ability to choose between the first and second husbands for the most profitable. *Gaines v. Jacobsen, supra.*

Other courts, construing the term "remarriage" as it is used in statutes comparable to § 14–10–122, have concluded that it is the ceremony of remarriage, and not the status or relationship, which terminates the alimony obligation. *See Glass v. Glass*, 546 S.W.2d 738 (Mo.App.1977); *see also In re Marriage of Harris*, 203 Ill.App.3d 241, 560 N.E.2d 1138 (1990).

The *Glass* court rested its conclusion on three considerations of fairness: the right of the husband to rely on the apparent remarriage of the former wife; the lack of standing of the husband to challenge the validity of the remarriage; and the justness that, as between the husband and his former wife, the former wife should bear the consequences of events that she brought on. *See also Sefton v. Sefton*, 45 Cal.2d 872, 291 P.2d 439 (1955). Accordingly, it concluded that, pursuant to terms of the statute providing for maintenance to terminate upon remarriage, the ceremony of remarriage operates absolutely to terminate the alimony obligation of the former husband. *Glass v. Glass, supra; see also Lehmann v. Lehmann*, 225 Ill.App. 513 (1922).

In *In re Marriage of Kolb*, 99 Ill.App.3d 895, 55 Ill.Dec. 128, 425 N.E.2d 1301 (1981), the Illinois court more recently reaffirmed the *Lehmann* decision and reiterated that, unless special circumstances exist, or the parties specifically indicate otherwise, the use of the term "remarriage" is intended to refer to a ceremonial marriage rather than a marital status. *See also Dodd v. Dodd*, 210 Kan. 50, 499 P.2d 518 (1972) (the term "remarriage" is an ordinary one in common usage).

We find the rationale and authority of these cases to be persuasive. Therefore, we hold that, unless the parties agree otherwise, under the plain language of § 14–10–122 a spouse's maintenance obligation terminates upon the remarriage of the payee and is not revived upon the annulment of that marriage. *See In re Marriage of Harris, supra; Glass v. Glass, supra.*

Furthermore, while a marriage declared invalid is declared so as of the date of the marriage, *see* § 14–10–111(5), nevertheless, our General Assembly has provided for an award of maintenance to a spouse upon a decree of invalidity. *See* § 14–10–111(6), C.R.S. (1987 Repl.Vol. 6B). Therefore, an alternative means of support, if needed and available, has been legislatively provided for to mitigate the effect of the termination of maintenance which may occur pursuant to the express terms of § 14–10–122.

## II.

Wife also contends that public policy dictates that the reestablishment of maintenance following an annulled second marriage be determined on a case-by-case basis. We are not persuaded by this argument.

Illinois' version of the Uniform Dissolution of Marriage Act, in contrast to § 14–10–111(5), allows the trial court to determine on a case-by-case basis and after considering all relevant circumstances, whether to make a decree of invalidity retroactive. Nevertheless, in *In re Marriage of Kolb, supra*, the court rejected the argument that public policy requires that the facts of each case be considered in determining whether the first husband's support

obligation is deemed to have terminated. Instead, it concluded, and we agree, that equity is best promoted by a consistent and predictable approach which will be easy for the parties to a dissolution to understand and act upon. Therefore, wife's arguments that the revival of maintenance is justified here because of her need and husband's ability to pay are irrelevant.

### III.

Wife also asserts, however, that § 14–10–114(1), C.R.S. (1987 Repl.Vol. 6B) expressly provides for the award of maintenance only "in a proceeding for dissolution of marriage or legal separation." Thus, she argues that it reflects a legislative intent that maintenance be awarded only in the two designated proceedings. Further, she maintains that § 14–10–114(1), thus interpreted, is the more specific statute and, therefore, controls over the conflicting provisions of § 14–10–111(6). We are not persuaded by these arguments.

When a conflict appears between two statutory sections, it is our duty to attempt to harmonize these statutes and to give effect to the legislative purposes underlying both sections. Moreover, the maxim that a specific statute prevails over a general statute has no application if the two statutory sections serve different purposes and it is possible to give effect to both statutes. *Independent Trust Corp. v. Stan Miller, Inc.,* 796 P.2d 483 (Colo. 1990); *Subsequent Injury Fund v. Grant,* 812 P.2d 1183 (Colo.App.1990).

Section 14–10–111(6) provides spouses whose marriage is declared invalid the same rights which would have accrued had the marriage instead been dissolved. Hence, we hold that § 14–10–111(6) and § 14–10–114(1) serve different purposes, albeit achieving similar results. Although the right to maintenance under § 14–10–111(6) is not a necessary concomitant of the rule which does not allow renewal of the former spouse's obligation, nevertheless, it is a separate statement of the policy intended by the General Assembly and buttresses the conclusion we reach. *See Glass v. Glass, supra.* Accordingly, we conclude

that §§ 14–10–111(6) and 14–10–114(1) may thus be harmonized, and therefore, maintenance may be awarded following a declaration of invalidity of marriage.

### IV.

Wife maintains that social security and pension benefits derived from a prior marriage are reinstated following the annulment. Therefore, she argues by analogy that maintenance should similarly be reinstated. In view of our analysis above, we are unpersuaded by this argument.

Order reversed.

PLANK, J., and HODGES, Justice * concur.