500 P.2d 162 (1972)
PLATEAU SUPPLY COMPANY, a Colorado corporation, Plaintiff-Appellee,
v.
BISON MEADOWS CORPORATION, a Colorado corporation, Defendant-Appellant,
Winter Park Meadows, Inc., a Colorado corporation, et al., Defendants.
The FIRST NATIONAL BANK OF FORT COLLINS, Colorado, a national banking association, Third-Party Plaintiff-Appellee,
v.
A. C. HENNE, Third-Party Defendant,
Russell W. Nelson et al., Third-Party Defendants-Appellants,
Insul-Lite Window & Door Mfg. Company, Intervenor,
Yampa Valley Electric Association, Inc., Intervenor.
No. 70-692.
Colorado Court of Appeals, Div. I.
August 15, 1972.
*163 Fischer & Beatty, Ward H. Fischer, Fort Collins, for third-party plaintiff-appellee.
*164 Roger D. Borland, Steamboat Springs, Acie W. Matthews, Sioux Falls, S. D., for defendants-appellants.
No appearance for plaintiff-appellee.
Selected for Official Publication
SILVERSTEIN, Chief Judge.
This appeal arises from a mechanic's lien foreclosure action brought by Plateau Supply Company to foreclose its lien on property owned by Bison Meadows Corporation, one of the defendants. Other lien claimants were also named as defendants, including The First National Bank in Fort Collins, Colorado, (hereinafter referred to as the Bank) which held a note secured by an open-end mortgage on the property.
The Bank asserted a cross-claim against Bison Meadows, to foreclose its lien, and against A. C. Henne, John E. Nelson, Russell W. Nelson and Edward C. Danielson, who owned all the stock in Bison Meadows Corporation. These four individuals were joined in the action as third-party defendants by the Bank whose claim against them was based on a continuing guaranty agreement executed by them which guaranteed payment of the note secured by the mortgage. Bison Meadows and its stockholders, except Henne, filed a cross-claim against the Bank.
After trial to the court, two decrees were entered. The first decree determined that three lien claimants had valid mechanics' liens, namely: Plateau Supply Co., Freund Plumbing and Heating Company, and Jerome P. Fox; and that these liens were prior to the lien of the Bank. Judgment for the amount of the liens was entered against Bison Meadows and its predecessor in interest, Winter Park Meadows, Inc.
Under the second decree, the court entered judgment in favor of the Bank against Bison Meadows, Inc., (sic) its predecessor, and its four stockholders, jointly and severally, for $95,535.73 plus interest; dismissed the counterclaim which was asserted against the Bank; decreed that the mortgage of the Bank constituted a valid lien junior to the mechanics' liens; and ordered foreclosure of all the liens.
At the request of the Bank a receiver had been appointed to act during the pendency of the litigation. The decree provided that the proceeds of the foreclosure sale should be applied first to the costs of the sale, then to the costs and expenses of the receiver, then to payment of the liens in the order of their priorities.

I
Bison Meadows Corporation, the two Nelsons, and Danielson appeal from the judgment against them in favor of the Bank and also assert error in the allocation of the proceeds of the foreclosure sale. They assert here, as they did in the trial court, that they should be relieved of liability on the Continuing General Guaranty because the Bank failed to disclose to them certain facts which it knew or should have known, and that such failure to disclose constituted a breach of fiduciary duty which amounted to actionable fraud or negligence.
The facts pertinent to this issue are that in October 1966, Winter Park Meadows, Inc., the then owner of the property covered by the liens, obtained a construction loan from the Bank to build a twenty-five unit condominium. A. C. Henne was the president and principal stockholder of the corporation. The corporation and Henne, individually, signed a note to the order of the Bank in the sum of $85,000. The note was secured by an open-end mortgage on the subject property.
Construction of the project was underway when, in June 1967, Henne became acquainted with the Nelsons and Danielson all of whom were interested in building condominiums. After several meetings the four individuals organized Bison Meadows Corporation, in which each acquired a one-quarter interest. On or about July 25, 1967, an agreement was entered which provided for conveyance of the partially completed building by Winter Park Meadows to Bison Meadows. The purchase price was $99,000, payable $10,000 in cash, $10,000 by promissory note, and the balance by the assumption of certain accounts *165 payable and by the assumption of the approximately $66,000 balance due the Bank on the construction loan. An addendum to the agreement provided that the parties could cancel the agreement within 60 days from its date without penalty.
Thereafter, Bison Meadows, through Henne, applied to the Bank for an extension of the due date of the note and for an additional advance. The Bank was advised of the terms of the agreement, and, after some negotiation, the Bank agreed to extend the due date and advance $14,000 on the condition, among others, that Bison Meadows and its four stockholders jointly and severally guarantee repayment of the $14,000 and the principal and interest due on the original note. This condition was met by the execution of the Continuing General Guaranty on August 22, 1967.
Subsequent to the signing of the guaranty, the $14,000 was advanced by the Bank, but no withdrawals were made from the account until after the 60 day cancellation provision expired. However, within a few days thereafter Henne withdrew all the funds in the account, as he had authority to do. Some of the funds so withdrawn were spent for purposes not connected with the project.
The evidence established that Henne made many material misrepresentations to the Nelsons and Danielson to induce them to enter into the July agreement. He falsely stated that unsatisfied obligations did not exceed $10,000; that the loan at the Bank was not in default; that the interest was current; and that the cost of completion would not exceed $10,000.
The appellants contend that the Bank knew the true facts and had a fiduciary duty to convey the information to them before they executed the guaranty.
The trial court found that the evidence did not support the claim that the Bank acted in bad faith or conspired to injure Bison Meadows or its stockholders, or that the Bank concealed any information which it knew or should have known and which it had a duty to divulge, or that it misrepresented any fact. The record supports this finding. The dispersal of the $14,000 to Henne was in accordance with the construction loan agreement, and thus it could not be considered an act in bad faith. Moreover, there is no evidence that the Bank knew that Henne had misrepresented the facts to the Nelsons and Danielson.
None of the elements of fraud, as set forth in Morrison v. Goodspeed, 100 Colo. 470, 68 P.2d 458, 71 P.2d 154, is present here. There was no confidential relationship between the Bank and the guarantors. A confidential relationship between two parties exists "when it is established that one occupies a superior position over the otherintellectually, physically, governmentally or morallywith the opportunity to use that superiority to the other's disadvantage." See United Fire & Casualty Co. v. Nissan Motor Corp., 164 Colo. 42, 433 P.2d 769. The guarantors had the same sources of information available to them as did the Bank. They had been given 60 days to make a full investigation and failed to do so. Their failure to investigate deprives them of any remedy Henne's misrepresentations might have afforded them. Wheeler v. Dunn, 13 Colo. 428, 22 P. 827.
The allocation of the proceeds of the foreclosure sale was proper. The mortgage of the Bank provided for the appointment of the receiver and the payment of his costs and expenses lies within the sound discretion of the trial court. Welch v. Renshaw, 14 Colo.App. 526, 59 P. 967.

II
The Bank appeals from the decree granting the three mechanics' liens. Its appeal is based on the fact that five of the condominium units were sold prior to the commencement of this action and the owners of those units were not joined as parties.
The Bank asserts no claim against Fox since his claim is small and the amount involved is trivial. As to Plateau Supply Company and Freund Plumbing and Heating Company, the Bank asserts that these *166 lien claimants are not entitled to recover the full amount of their liens against the unsold units and the common elements of the property. It further asserts that the liens cannot be enforced against only part of the property which was improved by the work done and materials supplied.
The pertinent section of the mechanics' lien law, C.R.S.1963, 86-3-3(4), provides that a person entitled to a lien for the construction of two or more "buildings, structures or other improvements" when constructed for the same person, and under the same contract, may apportion the value of the work done or materials supplied between the various improvements, and enforce his lien as so apportioned. The section then provides,
". . . but if the cost or value of such labor and materials, or either, cannot be readily and definitely divided and apportioned among the several . . . improvements, then one lien claim may be made, . . . and enforced against all such . . . improvements, together with the ground upon which the same may be situated, and in such case, for the purposes of this article, all such. . . improvements shall be deemed one . . . improvement, and the land on which the same are situated as one tract of land."
Plateau and Freund each filed blanket liens. Plateau's lien was asserted against the entire property. Freund's lien covered all the property except the five units which had been sold.
First, as to Plateau's lien, the evidence is uncontroverted that all of the work done and materials supplied by Plateau were incorporated in the "common elements" of the condominium and not in the individual units. The common elements include those areas of the land and improvements comprising the condominium, as defined in the Condominium Ownership Declaration, in which each unit owner owns an undivided fractional interest and shares non-exclusive, joint possession with all other unit owners. Where, as here, the work was done as a part of the entire project, and could not be "readily and definitely divided," it was proper to file a lien against the entire project. Our Supreme Court has held that where a person is entitled to a lien on an entire project, he is not prevented from satisfying his lien out of a part thereof. First National Bank v. Sam McClure & Son, Inc., 163 Colo. 473, 431 P.2d 460. Plateau was therefore entitled to satisfy its lien out of the unsold portion of the project without joining as parties the owners of the units sold.
The Bank asserts that the trial court erred in allowing Plateau's claim in the full amount sued for because it was admitted by Plateau that materials of the value of $268.50 were returned to Plateau and not incorporated into the project. The trial court did not deduct this amount from the claim because it found that these returned materials, "by their very nature, had to be used within a limited period of time and which became out-dated and unsaleable, through no fault of Plateau Supply Company."
It was error not to exclude the value of the returned material from the amount of lien. Although, under the terms of its contract, the landowner may have been liable to pay for these materials, where it is admitted that they were not incorporated into the structure, and their return was accepted by the supplier, they will not support a mechanic's lien. Farmers' Irrigation Co. v. Kamm, 55 Colo. 440, 135 P. 766. See Brannan Sand & Gravel Co. v. Santa Fe Land & Improvement Co., 138 Colo. 314, 332 P.2d 892.
Next, as to Freund's lien, the evidence established that part of the work performed and materials supplied consisted of installing bathtubs, sinks, and other plumbing fixtures in the individual units, and that the major part of the work was done in the common areas. Freund testified that his company had released the five excluded units from its lien upon receiving partial payments of the amount due under its agreement, which were duly credited against the indebtedness. Further, the amounts so paid exceeded the cost of the *167 labor and materials applicable to each such unit. The lien claim was allowed only as to the unpaid balance due under Freund's contract.
In Buerger Investment Co. v. B. F. Salzer Lumber Co., 77 Colo. 401, 237 P. 162, under facts which are parallel to those in the instant case, it was held that where the value of the labor and material can be readily divided and apportioned and the lien is asserted against only a portion of the lienable property, then the amount to be allowed under the lien must be prorated according to the apportionment. In effect, this was done here by the trial court, since the amount claimed in this action was only the balance due after deducting the amount paid when the lien was released as to the units sold. The amount allowed under the Freund lien was not erroneous.
The judgment is modified by reducing the amount of the lien claim of Plateau Supply Company by $268.50, and as so modified the judgment is affirmed.
DWYER and ENOCH, JJ., concur.