**The BRICKMAN GROUP, LTD., a Delaware corporation, Plaintiff–Appellant,**

v.

**COMPASS BANK, Defendant–Appellee.**

**No. 02CA1645.**

Colorado Court of Appeals, Div. V.

July 31, 2003.

Certiorari Granted Feb. 2, 2004.

Baker & Hostetler, LLP, Laurin D. Quiat, Paul Karlsgodt, Denver, Colorado, for Plaintiff–Appellant.

Davis Graham & Stubbs, LLP, Glen E. Keller, Jr., James S. Simko, Denver, Colorado, for Defendant–Appellee.

Opinion by Judge CARPARELLI.

Plaintiff, The Brickman Group, Ltd. (claimant), appeals the trial court's judgment that dismissed its action to foreclose a blanket mechanic's lien against property owned by defendant, Compass Bank (owner). We reverse and remand for further proceedings.

Claimant was the landscaping contractor for common areas of a forty-eight-unit townhouse development. The common areas are at the entrance to the development, along the streets, and between multiunit buildings. Owner provided construction financing to the developer for various units in the development.

When the developer failed to pay claimant, twenty-one of the forty-eight units remained unsold. Claimant filed a mechanic's lien against the common areas and nine unsold units adjacent to the common areas. The lien statement omitted twelve unsold units.

Claimant later filed this action to foreclose its lien. By the time of trial, owner had foreclosed on three of the units included in claimant's action and purchased them at the foreclosure sale.

After a bench trial, the court ruled as a matter of law that claimant's mechanic's lien was not valid because its lien statement did not include all properties that benefited from claimant's work and materials. Consequently, the court entered judgment in favor of owner.

## I. Blanket Liens

■ Mechanics' liens exist as a result of statute and are based on equitable considerations. *3190 Corp. v. Gould,* 163 Colo. 356, 431 P.2d 466 (1967). Their purpose is "to benefit and protect those who supply labor, materials, or services which enhance the value or condition of another's property." *Thirteenth St. Corp. v. A-1 Plumbing & Heating Co.,* 640 P.2d 1130, 1134 (Colo.1982). Consequently, courts liberally construe the statute to effect its remedial goals, but strictly construe it with regard to a claimant's right to a lien. *Schmidt Constr. Co. v. Fast,* 776 P.2d 1175 (Colo.App.1989).

When a claimant provides laborers, materials, or services for the benefit of more than one structure and does so under a single contract, it is lawful for the claimant to divide and apportion the indebtedness owed for the labor, materials, and services among the structures in proportion to the value that the labor, materials, and services contributed to each structure. When a claimant files such a lien, it may enforce it in the same manner as if it had furnished the laborers, materials, or services for each of the structures separately. Section 38–22–103(4), C.R.S.2002.

When it is not possible to readily and definitely ascertain the value of labor and materials to each structure, "one claim may be made, established, and enforced against" all the structures, together with the ground on which they sit. When a claimant files such a lien, all the structures are deemed to be a single structure, and the land is deemed to be a single tract of land. Section 38–22–103(4).

■ Although the statute does not specify a name for such liens, the term "blanket lien" is commonly used to refer to "a single lien ... made, established, and enforced against two or more improvements." *Hill Dev. Corp. v. Cordova,* 714 P.2d 926, 927 (Colo.App.1986); *see also Northwest Fed. Sav. & Loan v. Tiffany Constr. Co.,* 158 Ariz. 100, 101, 761 P.2d 174, 175 (Ariz.Ct.App.1988)("[a] lien for more than one lot or building is referred to as a blanket or joint lien").

Here, it is undisputed that claimant was entitled to assert a blanket lien against common areas and unsold units. *See Plateau Supply Co. v. Bison Meadows Corp.,* 31 Colo. App. 205, 500 P.2d 162 (1972)(blanket lien proper because work done to common areas of a condominium project could not be readily and definitely divided).

## II. Validity of Claimant's Lien

Claimant contends that the court erred when it ruled as a matter of law that claimant's lien was invalid because the lien statement did not include all units in the project. We agree.

In *Perkins v. Boyd,* 37 Colo. 265, 86 P. 1045 (1906), and *First National Bank v. Sam McClure & Son, Inc.,* 163 Colo. 473, 431 P.2d 460 (1967), the claimants filed lien statements that did not include all the property that benefited from their work and materials. In each case, when the claimant recorded the lien, the debtor owned both the included and the omitted property. In *Perkins,* the debtor continued to own the property when the claimant sued to foreclose. In *McClure,* a bank acquired the debtor's interest in the property before the foreclosure and asserted the rights of the owner.

In both cases, the supreme court ruled that the lien was valid, notwithstanding the fact that a portion of the indebtedness related to the improvement of property omitted from the lien statement. In addition, the court concluded that the claimants could satisfy the entire debt from the foreclosure of the included properties. *Accord Plateau Supply Co. v. Bison Meadows Corp., supra.*

■ Because the pertinent wording of the blanket lien provision has not changed since the supreme court decided these cases, *see* Colo. Sess. Laws 1899, ch. 118 at 265; Colo. Sess. Laws 2000, ch. 68 at 207, we conclude that a blanket lien that omits property that benefited from the mechanic's materials and work is valid against the property included in the lien statement.

Here, there is no dispute regarding claimant's right to a lien, and the facts are similar to those in *Perkins* and *McClure.* The lien statement does not include all properties that benefited from the work. When claimant recorded the lien and sued to foreclose it, the

developer-debtor owned the nine unsold units included in the lien statement and the twelve units that were omitted.

Therefore, we conclude that the decisions in *Perkins* and *McClure* are controlling and that claimant's lien is valid, notwithstanding the omission of the twelve unsold units.

### III. Enforcement of Claimant's Lien

■ Owner challenges enforcement of the lien based on *Independent Trust Corp. v. Stan Miller, Inc.*, 796 P.2d 483, 488 (Colo. 1990)(*ITC*), in which the supreme court held that a blanket lien "may not be enforced against less than all the properties in the absence of some showing of proper apportionment." Owner's reliance on this language is misplaced.

In *Plateau Supply Co. v. Bison Meadows Corp., supra*, a claimant's blanket lien omitted condominium properties that had already been sold. Nonetheless, the claimant released its claims against sold properties when it received partial payments of amounts due. A division of this court, citing *Buerger Investment Co. v. B.F. Salzer Lumber Co.*, 77 Colo. 401, 237 P. 162 (1925), ruled that the lien could be foreclosed against the properties that were included in the lien statement, but that the amount of the debt must be reduced to account for the partial payments the claimant had already received.

In *Buerger Investment*, the claimant's blanket lien included all properties that benefited from the claimant's work and materials. However, the debtor's title had passed to two successors. The claimant settled with one successor and released the lien as to that owner's property. The supreme court stated that it could see no reason why release of a part of the property covered by a blanket lien should effect a release of the lien against the remainder of the property.

Nonetheless, the supreme court ruled that the trial court should credit an equitable portion of the claimant's lien as the result of the release of the one parcel and allow the claimant to enforce a blanket lien or separate liens against the remaining parcels. *Buerger Inv. Co. v. B.F. Salzer Lumber Co., supra.*

In *ITC*, the claimants recorded blanket liens against an 1100–acre project, and two mortgage holders later took title to separate portions of the property. ITC took title to approximately 110 acres and asserted that the claimants' work could be readily and definitely divided between the two parcels based on acreage and that equity required apportionment. The supreme court concluded that ITC did not meet its burden of proving that the blanket liens were improper.

In contrast here, owner asserts that claimant's work cannot be readily and definitely apportioned and seeks to eliminate the lien, not to apportion it.

Despite these distinctions, owner relies on the following language in *ITC*:

> Subsection 38–22–103(4), and our interpretation of it, is in accord with the general rule that a blanket mechanics' lien upon several properties for materials and labor benefitting [sic] the properties may not be enforced against less than all of the properties in the absence of some showing of proper apportionment.

*ITC v. Stan Miller, Inc., supra*, 796 P.2d at 488.

However, the quoted language is contrary to the supreme court's earlier rulings in *Perkins* and *McClure*. It also conflicts with the court's reasoning in *Buerger Investment* that "where a blanket lien is permitted, each part is liable for the whole lien even against subsequent purchasers." *Buerger Inv. Co. v. B.F. Salzer Lumber Co., supra*, 77 Colo. at 405, 237 P. at 164. Because the supreme court in *ITC* did not cite or discuss the rulings in *Perkins* and *McClure*, and because the quoted excerpt was not essential to the outcome, we conclude that the supreme court has not overruled its earlier holdings.

Consequently, we conclude that, subject to apportionment, claimant's lien is enforceable against owner's properties as listed in the lien statement.

### IV. Apportionment of Claimant's Lien

■ The supreme court has reasoned that the equities in favor of mechanic's lien claimants take precedence over efforts to achieve absolute fairness among the owners of prop-

erties included in such liens. *ITC v. Stan Miller, Inc., supra; Buerger Inv. Co. v. B.F. Salzer Lumber Co., supra.*

Here, an apportionment based on the cost of materials and labor involved in the construction of each townhouse, as anticipated by the statute, is impossible because claimant did not provide materials to or perform work on the townhouse units themselves. Instead, claimant contributed materials to and performed work on property that was to be held in common ownership among all the eventual owners of the townhouses. Hence, any apportionment must necessarily be based on equitable considerations.

Consistent with the referenced cases and the equitable principles upon which the statute is based, we conclude that when claimant failed to include all benefited properties in its lien statement, the effect was to release the twelve unsold properties that were omitted from the lien. However, like the supreme court in *Buerger Investment,* we see no reason why claimant's release of those properties should effect a release of the properties included in the lien statement.

On remand, the trial court should make an equitable apportionment of the debt to owner's three units, based on the premise that they are among twenty-one units that claimant could have included in the lien statement. The court may then order foreclosure in the apportioned amount.

The judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.

Judge ROTHENBERG and Judge VOGT concur.