**COMPASS BANK, Petitioner,**

v.

**The BRICKMAN GROUP, LTD.,
a Delaware corporation,
Respondent.**

**No. 03SC632.**

Supreme Court of Colorado,
En Banc.

March 7, 2005.

Davis Graham & Stubbs, LLP, Glen E. Keller, Jr., James S. Simko, Denver, for Petitioner.

Baker & Hostetler, LLP, Laurin D. Quiat, Paul Karlsgodt, Denver, for Respondent.

COATS, Justice.

Compass Bank, the defendant in an action brought by the Brickman Group to foreclose on a mechanics' lien, sought review of the court of appeals reversal of a judgment invalidating the lien. *See Brickman Group, Ltd. v. Compass Bank*, 83 P.3d 1167 (Colo.App. 2003). The district court had found Brickman's blanket lien invalid because it included fewer than all of the properties that benefited under the same contract. The court of appeals reversed, holding that the lien could be enforced against Compass Bank's properties, despite some of the benefiting properties never having been included in the lien statement and others having been released in settlements with Brickman; and it remanded with directions for an equitable apportionment of the amount of the debt outstanding on the contract.

Because Colorado law permits a mechanics' lien to include and be enforced against more than one but fewer than all of the properties benefiting under the same contract, as long as a proper apportionment of the debt can be made, the judgment of the court of appeals is affirmed in part. To the extent, however, that the court of appeals' directions for apportionment fail to account for all of the benefiting properties, its judgment is reversed.

## I.

In August 2000, The Brickman Group, Ltd. recorded a mechanics' lien, describing the common areas of a residential community project and nine contiguous housing units. Two months later, it filed suit against the developer, Anthem Communities/R.G.B., LLC. Some three or four years earlier, Brickman and its predecessor in interest had entered into contracts with Anthem and had begun providing labor and materials in the common areas of the first phase of the project, which included the main entrance and 48 town and manor homes. At the time Brickman filed its lien, 21 of the 48 units remained unsold, and by agreement, Anthem continued to make partial payments on the contract as each unit was sold.

In May 2001, Compass Bank was appointed receiver for 11 units, for which its predecessor in interest had made construction loans, secured by deeds of trust; and Compass began foreclosing on those units. Four of those units were among the nine described in Brickman's lien. All foreclosure proceedings were temporarily stayed when Anthem filed a voluntary petition in Bankruptcy; but in February 2002, pursuant to an agreement with Anthem, Compass was relieved of the stay and proceeded with foreclosure sales. One of the four units was sold and released from Brickman's lien in exchange for a portion of the outstanding debt remaining on Anthem's contract. Of the remaining three Compass Bank/Brickman units, Compass was the only bidder at foreclosure sales and took title to two of the units when the redemption periods expired, subject only to the claims of senior lienors. The third unit remained under negotiation for purchase at the time of trial in this case.

Brickman too was relieved of the Bankruptcy stay, and it also proceeded with its foreclosure action. Because some of the units listed in its lien were units in which Compass had an interest, Brickman amended its pleadings to join Compass as a defendant. Before trial, the five Anthem units in which Compass had no interest were released by Brickman, as they were sold, in exchange for some portion of the outstanding obligation on the contract. Therefore, at the time of trial, the only units encumbered by Brickman's lien were the three units owned (or in foreclosure) by Compass Bank.

At the time of filing its lien, Brickman claimed an unpaid balance of $182,659. By the time of trial, in July 2002, Brickman had recovered an additional $102,448. By its own calculations, including interest on the unpaid amount, Brickman claimed $158,891 against the remaining three Compass properties. At trial, Compass conceded that Brickman's mechanics' lien was senior to its own deeds of trust, and contested only the validity and enforceability of a single mechanics' lien claim against more than one, but fewer than all, of the properties benefiting under the contract.

The district court accepted the factual assertions of the parties and entered judgment for Compass Bank. It declared Brickman's lien invalid, reasoning that even though a person supplying labor or materials is sometimes entitled to file a single lien describing all of the properties benefiting under a single contract, he cannot file a lien, for the entire balance of the contract, against fewer than all of the benefiting properties. Brickman appealed. The court of appeals reversed, holding that the Colorado statutory scheme has been construed to permit a mechanics' lien describing more than one but fewer than all of the properties benefiting from work done pursuant to a single contract, as long as the value of the work can be equitably apportioned; and further, that equitable apportionment was possible in this case.

## II.

■ The right to a mechanics' lien is wholly a creature of statute. *Independent Trust Corp. v. Stan Miller, Inc.*, 796 P.2d 483, 487 (Colo.1990) ("*ITC*"). For more than a century, Colorado statutes have permitted the filing of separate lien claims on each of several buildings, structures, or other improvements for which labor and materials were provided under a single contract, in proportion to the value of the labor and materials furnished for the particular structure or improvement. *See* Mechanics Liens, 1899–1901 Colo. Sess. Laws 261, 321 (currently section 38–22–103, C.R.S. (2004)).[1]

Our statutes have also permitted, however, a single lien claim against all such buildings, structures, or other improvements (together with the ground upon which they are situated), if the cost or value of the labor or materials cannot be readily and definitely apportioned; and in that case, all of the improvements are deemed one improvement, and the land on which they are situated, one tract of land. *Id.* Although the statute does not define or use the term, such liens that purport to cover several pieces of property in one statement have been referred to as "blanket liens." *See Buerger Inv. Co. v. B.F. Salzer Lumber Co.*, 77 Colo. 401, 403, 237 P. 162, 163 (1925).

■ Unlike a number of other jurisdictions, *see ITC*, 796 P.2d at 487, we have long construed our mechanics' lien statutes (and this section in particular) liberally, according to equitable principles, *see Buerger*, 77 Colo. at 406–07, 237 P. at 164–65, for the benefit and protection of mechanics and materialmen. *See Darien v. Hudson*, 134 Colo. 213, 302 P.2d 519 (1956). We have held that when construed reasonably, liberally, and equitably, section 38–22–103(4) provides a claimant various options, based on his ability to apportion the value of his work. The statute was not intended, however, to force a claimant to choose whether to apportion or file a blanket lien, and later pay for even a harmless mistake of fact or law by losing his whole lien. *Buerger*, 77 Colo. at 407, 237 P. at 165.[2]

---

**1.** Section 38–22–103(4) provides:

Whenever any person furnishes any laborers or materials or performs any labor, for the erection, construction, addition to, alteration, or repair of two or more buildings, structures, or other improvements, when they are built and constructed by the same person and under the same contract, it is lawful for the person so furnishing such laborers or materials or performing such labor to divide and apportion the same among the buildings, structures, or other improvements in proportion to the value of the laborers or materials furnished for and the labor performed upon or for each of said buildings, structures, or other improvements and to file with his or her lien claim therefor a statement of the amount so apportioned to each building, structure, or other improvement. This lien claim when so filed may be enforced under the provisions of this article in the same manner as if said laborers or materi-

als had been furnished and labor performed for each of said buildings, structures, or other improvements separately; but if the cost or value of such labor, laborers, or materials cannot be readily and definitely divided and apportioned among the several buildings, structures, or other improvements, then one lien claim may be made, established, and enforced against all such buildings, structures, or other improvements, together with the ground upon which the same may be situated, and in such case for the purposes of the article, all such buildings, structures, and improvements shall be deemed one building, structure, or improvement, and the land on which the same are situated as one tract of land.

**2.** "The construction asked for by plaintiff in error would make the transaction like a game of cards where a misplay brings disaster merely because it is a misplay. There has been too much of that sort of construction of the Mechan-

■ Consistent with this understanding, we have always sought to avoid a needless and inequitable loss of a mechanic's or materialman's security interest. Although a lien clearly cannot attach to property other than that mentioned in the lien statement, *see Perkins v. Boyd,* 37 Colo. 265, 86 P. 1045 (1906); *see also First National Bank in Fort Collins v. Sam McClure & Son, Inc.,* 163 Colo. 473, 431 P.2d 460 (1967), where a claimant has chosen to file against a single property, even though multiple properties were benefited under the same contract and the value of the work cannot be apportioned among them, we have held that the entire debt on the contract can nevertheless be recovered from the single encumbered property, as long as the debtor holds the sole interest in all of the properties benefiting under the contract. *Id.*

■ Similarly, where a claimant has chosen to file a blanket lien, we have held that the failure to show that the claim cannot be apportioned is not a defect in the action itself but merely goes to the availability of relief. *See Buerger,* 77 Colo. at 405–07, 237 P. at 164–65. As long as there is support for any kind of lien, the court is not barred from allowing a segregated lien or liens against each property. *Id.* If a claimant chooses in good faith to file a blanket lien on more than one structure or improvement, and it turns out that an apportionment is possible after all, the court may therefore equitably apportion the debt in its decree. *Id.*

■■ Naturally enough, it follows that a blanket lien is not rendered invalid merely because some of the covered properties, benefiting under the same contract, are released from the lien. *See id.* The lien may still be enforced against the remaining properties by crediting an equitable portion of the value of labor and materials provided under the contract to the released properties. *Id.* For the same reasons, describing in a blanket lien (from the moment of its filing) fewer than all of the properties benefiting under the same contract does not render the lien invalid; it simply affects the availability of relief.

The district court therefore erred in declaring invalid Brickman's lien solely because it claimed the entire unpaid balance of the

contract and described more than one but fewer than all of the properties benefiting under the contract. While the court of appeals clearly reached this same conclusion, it erroneously rejected as dictum our statement in *ITC* that "a blanket mechanics' lien upon several properties for materials and labor benefiting the properties may not be enforced against less than all of the properties in the absence of some showing of proper apportionment." That court's confusion appears to have arisen both from its misreading of *Buerger* to endorse a position that it actually rejected, and from its treatment of the segregated, single-property liens in *Perkins* and *McClure* as "blanket liens."

With regard to the former, the court of appeals attributed to *Buerger* the conclusion that "where a blanket lien is permitted, each part is liable for the whole lien even against subsequent purchasers." *Brickman,* 83 P.3d at 1170 (quoting *Buerger,* 77 Colo. at 405, 237 P. at 164). Although we found such a solution to the problem of releasing some properties from a blanket lien preferable to holding that "a release of part releases all," we ultimately rejected both approaches in favor of allowing a blanket lien against the remaining properties, "after crediting an equitable portion" to any released properties. *Buerger,* 77 Colo. at 405, 237 P. at 164.

And with regard to the latter, the court of appeals misunderstood the quoted proposition from *ITC* to conflict with our rulings of *Perkins* and *McClure,* describing a circumstance in which the entire contract debt could be recovered from a single, encumbered property, despite the fact that other properties also benefited under the contract. While it may have been clearer to expressly limit the general rule articulated in *ITC*—that a blanket mechanics' lien may not be enforced against less than all of the benefiting properties in the absence of some showing of proper apportionment—to blanket liens involving properties other than those owned by the debtor himself, free of any other interests (as was actually the case in *ITC*), in no event could the quoted proposition conflict with our holdings in *Perkins* and *McClure,* because they addressed the recoverability of the un-

ic's Lien Law, and it ought to go no farther."

Buerger, 77 Colo. at 407, 237 P. at 165.

paid balance of a contract in the absence of, rather than upon, a blanket lien.

To the extent that the general rule, as restated in *ITC,* necessarily implies that blanket liens are enforceable upon a showing of proper apportionment against fewer than all of the benefiting properties, it is not only an accurate statement of the law, but actually controls the outcome of this case.

## III.

The mere fact that labor was not performed on, and materials were not provided to, specific buildings, structures, or other improvements does not, of course, mean that they were not benefited by the contract or that the value of the labor and materials provided under the contract cannot be apportioned among them. Perhaps the quintessential example of such apportionable value exists in a contract for improvements to the common elements of a condominium. Where the common elements are areas of land and improvements comprising the condominium, as defined in the Condominium Ownership Declaration, in which each unit owner owns an undivided fractional interest and shares non-exclusive, joint possession with all other unit owners,[3] the proportion in which each unit benefits by improvements to the common elements is clear. *See Plateau Supply Co. v. Bison Meadows Corp.,* 31 Colo.App. 205, 500 P.2d 162 (1972). Even in planned communities or subdivisions in which individual property owners do not own an undivided fractional interest in common elements,[4] however, the value of improvements that benefit the community as a whole may still be apportionable among the units comprising the community, under some circumstances. *See, e.g., CS & W Contractors, Inc. v. Southwest Sav. & Loan Assoc.,* 180 Ariz. 167, 883 P.2d 404 (1994) (basic infrastructure, such as roads, sewers and water lines, equally benefit the individual lots of a subdivision).

Equity in apportioning the value of work done under a single contract (and therefore equity in apportioning the debt remaining on the contract) necessarily depends upon the proportion in which each of the structures or properties benefited from the work done under the contract. Although mechanics' liens are created and maintained for the protection and benefit of mechanics and materialmen, the value of work done under a single contract cannot be apportioned according to the capacity of the lienor, in law or in fact, to recover his entire debt. While the lienor's good faith decision to include some but not all of the properties benefiting under a contract, or to release certain properties, does not invalidate a blanket lien, it clearly may affect the extent to which the remaining debt can be recovered from the remaining encumbered properties. *See, e.g., CS & W Contractors* (lienor could extract only 4/52nds of value of original contract for work on roads, sewers, and water lines benefiting 52–unit subdivision, unless he could show that more value was received by the four units included in his blanket lien).

Similarly, while later sales or encumbrances may recast the interested parties or alter the nature and priority of their interests, they cannot change the proportion in which the properties benefited from performance of the contract. *See, e.g., Brunzell v. Lawyers Title Ins. Corp.,* 101 Nev. 395, 705 P.2d 642 (1985) (where lienor attempted to collect entirety of lien against unsold 36 units of 72–unit condominium, it could enforce only 1/72nd of contract against each); *Stevens Constr. Corp. v. Draper Hall, Inc.,* 73 Wis.2d 104, 242 N.W.2d 893 (1976) (allocating 1/35th of total contract amount to each of eight units already sold in 35–unit condominium). Statutory provisions relating mechanics' liens back to the time of the commencement of work under a contract between the owner and first contractor, *see* section 38–22–106(1), C.R.S. (2004), are clearly designed to pre-

---

**3.** Condominium ownership is recognized and governed by statute in Colorado. *See Condominium Ownership Act,* §§ 38–33–101 to –113, C.R.S. (2004). As we have pointed out before, the "very definition of a condominium requires the existence of an undivided interest in common elements." *Trailside Townhome Assoc., Inc. v. Acierno,* 880 P.2d 1197, 1200 (Colo.1994) (citing

*Cherry Hills Resort Dev. v. Cherry Hills,* 790 P.2d 827, 830 (Colo.1990)).

**4.** The parties in this case now agree that the unit owners do not own the common areas, although the court of appeals apparently believed otherwise. *See Brickman,* 83 P.3d at 1171.

serve the priority of the mechanic's interest, notwithstanding subsequent sales and encumbrances; but a failure, including even a legal inability, to collect an appropriate portion of the unpaid debt from sold or otherwise encumbered properties cannot increase the benefit enjoyed by the remaining properties.

On remand, the district court must determine whether and, if so, precisely how an equitable apportionment can be made of the value of the work performed under the contract, consistent with the principles outlined in this opinion. Because the district court erroneously found Brickman's lien invalid and dismissed Brickman's action, the record before this court is inadequate for such a determination.[5] To the extent that the court of appeals directions for apportionment on remand, however, suggest that the unpaid amount of the contract claimed by Brickman in its lien must be apportioned among the 21 units that remained unsold at the time of filing, those directions are inconsistent with this opinion and are therefore rejected. Instead, the remaining debt can be recovered from the remaining encumbered properties, if at all, only to the extent that each actually benefited from the work performed under the contract.

## IV.

The judgment of the court of appeals is therefore affirmed in part and reversed in part, and the case is remanded to attempt an equitable apportionment of the outstanding debt.

Justice BENDER, dissenting.

A person asserting a lien claim for work performed upon, or laborers or materials provided for, two or more buildings, structures, or other improvements (properties) under the same contract must comply with one of the two alternative ways of filing such a lien under subsection 38–22–103(4), C.R.S. (2004), to perfect a valid lien. The claimant must either: (1) divide and apportion the value of the materials or laborers furnished for, or labor performed upon, the properties

in proportion to the value received by each and file with the lien claim a statement of the amount so apportioned to each; or (2) where apportionment is not possible, file a blanket lien against all the properties involved for the entire cost or value owed. Because the lien filed by the Brickman Group failed to comply with either of these two statutory requirements, I conclude that Brickman's lien is invalid and is therefore not entitled to equitable enforcement. Hence, I respectfully dissent.

### Discussion

Brickman filed a single lien claim for the entire unpaid contractual balance against only some of the properties which benefited from its contract with the developer. The properties charged with its lien included nine units and the common areas of forty-eight benefited properties. Brickman's lien did not divide and apportion the amount owed; it did not contain a statement of the amount apportioned to the properties liened; and it was asserted against only a portion of the properties benefited. Brickman's lien thus was a "hybrid" lien because it complied with some, but not all, of the requirements of each alternative type of lien under subsection 38–22–103(4). Hence, this hybrid lien failed to satisfy the requirements of either statutory alternative.

Under subsection 38–22–103(4), when a person performs any labor upon, or furnishes laborers or materials for, two or more properties under the same contract, that person must either "divide and apportion [the value] among the [properties] in proportion to the value ... for each ... and ... file with his or her lien claim therefor a statement of the amount so apportioned to each," or, "if the cost or value ... cannot be readily and definitely divided and apportioned ... then one lien claim may be made, established, and enforced against all such [properties]."

In my view, a claimant filing a lien for work performed upon, or laborers or materials furnished for, two or more properties under the same contract is required to com-

5. In light of apparent change orders, even the contract price for all of the work performed remains unclear.

ply with one of these two alternatives to assert a valid, and thus enforceable, lien. Subsection 38–22–103(4) uses the discretionary term "may" and the permissive phrase "it is lawful" in describing these alternative means of filing a lien. However, the use of this discretionary language does not mean that a claimant is not required to comply with one of the two statutory alternatives. Instead, I read the permissive language in subsection (4) as allowing a claimant to choose which one of the two types of liens to assert. Hence, a claimant asserting a lien for work performed upon, or laborers or materials furnished for, two or more properties under the same contract must either divide and apportion and file a statement of the amount apportioned to the properties liened or assert the lien against all the properties involved.[1]

Treating subsection 38–22–103(4) as requiring a claimant to comply with one of these two alternatives is consistent with this court's previous reading of this subsection as creating "requirements" for filing a valid lien. *See Buerger Inv. Co. v. B.F. Salzer Lumber Co.,* 77 Colo. 401, 404, 237 P. 162, 164 (1925) (concluding that where claimant's work "was to be done under one contract on *all* the houses, that is sufficient to satisfy the *requirements* of [predecessor to subsection 38–22–103(4) ] ... [w]e find no ... *requirement* except that there must be one contract for *all* the lots, and that the lien must be such as *not to be readily and definitely apportioned* ") (emphasis added); *Independent Trust Corp. v. Stan Miller, Inc.,* 796 P.2d 483, 488 (Colo.1990) (*"ITC"*) (construing subsection 38–22–103(4) and quoting, with approval, from *Buerger*: "the claimant may apportion where possible; if impossible, he *must* spread his blanket [against all the properties]") (emphasis added).

Further, the plain language of subsection 38–22–103(4) requires that a claimant comply with one of the two alternatives to assert a valid, and thus enforceable, lien. A lien claimant under the first alternative of subsection (4) must divide and apportion the value among the properties and file with the lien claim a statement of the amount apportioned to each property. Following this lan-

guage, the next sentence of the subsection expressly conditions the enforcement of the lien on the claimant's compliance with dividing and apportioning and filing a statement of the apportioned amount. This sentence states: "This lien claim *when so filed may be enforced* ..." (emphasis added). Thus, a lien asserted under this first alternative may be enforced only after the claimant first asserts a lien which complies with the statutory language of subsection (4). The majority reads out this statutory mandate by permitting enforcement even though no lien was "so filed" by Brickman.

Under the second alternative, where the cost or value is not readily divisible, a claimant must assert a lien against "all" the properties before that lien may be enforced. Subsection 38–22–103(4) provides that "one lien claim may be *made, established, and enforced* against all [the properties]" (emphasis added). The terms "made" and "established" refer to the creation, or bringing into existence, of a lien. *See Webster's New World College Dictionary* 816, 465 (3rd ed.1996) (defining "make" as "to bring into a specified condition" and defining "establish" as "to cause to be or happen; bring about"). Based on the General Assembly's use of words which describe the creation of a lien in the first instance, the legislature must have intended a valid lien be asserted against all the properties involved before that lien may be enforced. While in certain contexts this court has interpreted "and" to mean "or," I do not believe that such an interpretation is appropriate here because of the specific terms used by the General Assembly, *i.e.,* "made," "established," and "enforced," and because of the specific placement of these terms in subsection (4). Both the General Assembly's use of the past tense and its placement of the terms "made" and "established," (terms referring to the creation and bringing into existence of a lien), before the term "enforced" indicate that the legislature intended that a lien be validly made against all the properties before it may be enforced. The order of the terms reflects the common principle that one must possess a legally

---

1. In stating that the blanket lien must be asserted against "all" the properties, the lien need not be filed against those properties, if any, which were already released by the claimant.

cognizable right—in this case, a valid lien claim—before that right may be enforced. Thus, in this context, subsection (4) should be read as requiring that a valid lien be asserted against all the properties involved before such a lien may be enforced. *See Everitt Lumber Co. v. Prudential Ins. Co. of America*, 660 P.2d 925, 926 (Colo.App.1983) (noting long history of Colorado courts requiring strict construction of those "statutory provisions upon which the right to the existence of the lien depends").

In addition, a claimant asserting a lien under subsection 38–22–103(4) is required to comply with one of the two alternatives before its lien may be enforced because the requirements under this subsection pertain to perfecting the lien. To perfect a lien of any type, a claimant must comply with the requirements of section 38–22–109, C.R.S. (2004), the portion of the mechanics' lien statute pertaining to perfection of a lien in general. *See* § 38–22–109(1) ("Any person wishing to use the provisions of this article shall file for record . . . a statement containing [the requirements of subsections 38–22–109(1)(a)—(1)(d) ]"); 9 Stephen W. Seifert, *Colorado Creditors' Remedies—Debtors' Relief* § 4.33, at 214–16 (1990). The requirements for perfecting a lien under section 38–22–109 include, among others, that the claimant file both a "description of the property to be charged with the lien" (subsection 38–22–109(1)(c)) and a "statement of the amount due or owing" the claimant (subsection 38–22–109(1)(d)).

To comply with both sections 38–22–109 and 38–22–103(4), a claimant asserting a lien under the first alternative of subsection 38–22–103(4) must file not only a "statement of the amount due," but a "statement of the amount so apportioned" to each property. Because this requirement under subsection 38–22–103(4) corresponds to the requirement under subsection 38–22–109(1)(d) for filing a statement of the amount owed, but actually requires more specificity, *i.e.,* an "apportioned" amount, I read the first alternative as creating a heightened requirement for perfecting those liens filed for work performed upon, or laborers or materials furnished for, two or more properties under the same contract.

Similarly, the "description of the property to be charged with the lien" requirement of section 38–22–109 corresponds to the requirement under subsection 38–22–103(4) that the claimant assert its lien against "all" the properties. A property description is adequate under section 38–22–109(1)(c) if it is "sufficient to identify" the property. *See McIntire & Quiros of Colo., Inc. v. Westinghouse Credit Corp.,* 40 Colo.App. 398, 401, 576 P.2d 1026, 1027 (1978). In requiring that a claimant assert its blanket lien against all the properties, subsection 38–22–103(4) not only requires that the claimant identify the properties charged but specifies which properties must be so identified, *i.e.,* "all" of them. Again, because this statutory requirement under subsection 38–22–103(4) corresponds to, and is actually more specific than, the requirement under subsection 38–22–109(1)(c) for perfecting a lien in general, I believe that the second alternative of subsection 38–22–103(4) creates a heightened requirement for perfecting a lien for labor performed upon, or materials or laborers furnished for, two or more properties under the same contract.

Because compliance with one of the two alternatives is required for perfection of a lien under subsection 38–22–103(4), a lien which fails to so comply is necessarily invalid and therefore unenforceable. *See Kalamath Inv. Co. v. Asphalt Paving Co.,* 153 Colo. 109, 114, 384 P.2d 938, 941 (1963) ("The existence of a [mechanics'] lien . . . is not presumed . . . [the claimant must] show that he has complied with *all of the essential requirements of the statute under which he claims."* (quoting 57 C.J.S. Mechanics' Liens § 308)); *Everitt Lumber Co.,* 660 P.2d at 926 (determining lien to be unenforceable where claimant failed to strictly comply with statutory section for perfecting that lien); *Sprague Inv. Co. v. Mouat Lumber & Inv. Co.,* 14 Colo.App. 107, 121, 60 P. 179, 184 (1899) ("The one who claims the lien must exactly observe the statute in initiating and perfecting his right."). Accordingly, because Brickman failed to comply with either alternative of subsection (4), I conclude that its lien is both invalid and unenforceable.

Although the majority admits that Brickman failed to assert its lien against all the

properties involved and failed to divide and apportion, see maj. op. at 959, the majority, citing *Buerger*, applies equitable principles to enforce the lien. While I agree with the majority that Colorado courts have long applied equitable principles to construe liberally the mechanics' lien statutes in favor of lien claimants, see maj. op. at 958, this liberal construction of the statute has not been applied across the board and, in my view, is not appropriate here because Brickman failed to perfect a valid lien. *See Schneider v. J.W. Metz Lumber Co.*, 715 P.2d 329, 332 (Colo. 1986) ("Colorado courts have long held that the mechanics' lien statute [is in] derogation of the common law [and] is to be strictly construed in determining who is entitled to a lien."); *Brannan Sand & Gravel Co. v. F.D.I.C.*, 928 P.2d 1337, 1342 (Colo.App.1996) ("The mechanics' lien statute is to be strictly construed with respect to those acts necessary to perfect the lien and liberally construed with respect to the benefits accorded a properly perfected lien."), *rev'd on other grounds*.[2] Because a mechanics' lien is a creature of statute, see *ITC*, 796 P.2d at 487, the equitable enforcement of such a lien is appropriate only where it is first determined that the lien claim was made in accordance with the statutory language which created the right to assert that lien in the first place.

**2.** See also *Powder Mtn. Painting v. Peregrine Joint Venture*, 899 P.2d 279, 281 (Colo.App.1994); *Richter Plumbing & Heating, Inc. v. Rademacher*, 729 P.2d 1009, 1012 (Colo.App.1986) (mechanics' lien statute is to be "strictly construed in determining whether the right to a lien exists").

**3.** See also *ITC*, 796 P.2d at 485 n. 2 (before considering enforcement of mechanics' liens, this court noted the trial court's determinations regarding the validity of the liens: "[The mechanic] had a *valid* mechanics' lien in the principal amount of . . ." (emphasis added).).

**4.** In *Buerger*, the court concluded that where the claimant had chosen in "good faith" to file a blanket lien against all the unreleased properties and had "ma[d]e his statement so," he should not lose his entire lien even if it "turn[ed] out" that an apportionment was possible and equitable to all parties. 77 Colo. at 407, 237 P. at 165; see also *ITC*, 796 P.2d at 488 (quoting "good faith" choice of claimant to apportion or file blanket lien against all properties). Unlike the circumstances here, *Buerger* thus concerned the enforcement of a lien claim which was asserted

Neither *Buerger* nor the plain language of subsection 38–22–103(4) supports the majority's equitable enforcement of Brickman's lien. In *Buerger*, the court first determined that the claimant's blanket lien was valid before it considered whether equitable apportionment was appropriate. 77 Colo. at 406, 237 P. at 164 (stating, "[I]t was sold for one purpose, on one contract, on one set of buildings . . . . That *permits* one lien.") (emphasis added).[3]

Further, equitable enforcement of Brickman's lien is not appropriate because, unlike the claimant in *Buerger*, Brickman did not make a "good faith" choice of apportioning or filing a blanket lien but, rather, failed to comply with the express statutory requirements applicable to either alternative.[4] In my view, Brickman's non-compliance with express statutory language cannot be interpreted as a "good faith" attempt to assert a valid lien. Under these circumstances, I believe this court should not apply equitable principles to construe the mechanics' lien statute in favor of the lien claimant. *See Salzman v. Bachrach*, 996 P.2d 1263, 1269 (Colo.2000) (describing, in general, the doctrine that "one who seeks equity must do equity").[5] Any inequities which may thus result to Brickman from my interpretation of the statute stem from its own failure to adhere to the express statutory language for asserting its lien.[6]

in "good faith" and was initially, at least, filed in compliance with the statutory requirements of the predecessor to subsection 38–22–103(4).

**5.** For these same reasons, I disagree with the majority's characterization of Brickman's improperly asserted blanket lien as being a "misplay." *See* maj. op. at 958 n. 2. Filing a lien while not complying with the express statutory requirements for creating and perfecting that lien is not a misplay but, rather, a violation of express statutory language.

**6.** I also note that under *Buerger*, equitable apportionment should only be allowed where the court "deems it equitable to *all parties*." 77 Colo. at 407, 237 P. at 165 (emphasis added). Where a claimant files a lien against only selected properties for the entire amount owed, it seems inequitable to the selected properties' owners, who are effectively forced to defend themselves against the lien claim for the entire unpaid amount, for the court to equitably enforce the lien for the benefit of the lien claimant who failed to comply with the express statutory language for asserting that lien in the first instance.

In addition, I note that the majority's holding makes superfluous the express requirement under subsection 38–22–103(4) that the claimant file a statement of the amount apportioned with his or her lien claim. Brickman failed to divide and apportion the value owed and failed to file a statement of an amount apportioned to each property. By directing the trial court to equitably apportion this lien, the majority makes superfluous the express statutory requirement that a statement of the amount apportioned be filed at the time the claimant initially files its lien.[7] In other words, the court is performing the task the legislature specifically directed the claimant to do. I would avoid such a statutory construction. *See Widder v. Durango Sch. Dist. No. 9–R*, 85 P.3d 518, 532 (Colo. 2004) (interpretations rendering a statutory provision superfluous should be avoided). Hence, I respectfully dissent.

**7.** Again, the court in *Buerger* allowed for equitable apportionment where the claimant had at least made a "good faith" choice to assert a blanket lien and had complied with the statutory language of former subsection 38–22–103(4) for asserting that type of lien.